**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| MARIA FOREST, LARYSA NAZARENKO, SVITLANA ANTOSHCHENKO, and GLENNICE SIMON, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br><br>City of New York; Gary Jenkins, in his official capacity as Commissioner, New York City Department of Social Services; and Lisa Fitzpatrick, in her official capacity as Administrator, New York City Human Resources Administration,<br><br>Defendants. | **Civ.**<br><br><br><br>**CLASS ACTION COMPLAINT** |

**PRELIMINARY STATEMENT**

1.      Plaintiffs are low-income New Yorkers who live below or near the poverty line and rely on Supplemental Nutrition Assistance Program ("SNAP") and Cash Assistance benefits administered by the New York City Department of Social Services/Human Resources Administration ("HRA") to feed themselves and their families. Defendants, the City of New York, the Commissioner of the New York City Department of Social Services, and the Administrator of the New York City Human Resources Administration, are responsible for ensuring these essential programs comply with the law. Plaintiffs bring this action on behalf of themselves and a Class of low-income New York City households to challenge Defendants' failure: 1) to process applications and recertifications for these subsistence-level benefits within the timeframes required by federal and state law; and 2) to maintain functional systems that

1

enable SNAP and Cash Assistance households to submit applications and recertifications for these benefits. Defendants' failures force families to go hungry or make impossible decisions like whether to pay rent or feed their children.

2.      Defendants are violating Plaintiffs' rights in two ways.

3.      First, HRA is woefully failing to meet its obligation to process SNAP and Cash Assistance applications and recertifications.

4.      In August 2022, HRA failed to timely process *half* of all SNAP applications in New York City. As a result, thousands of New York City households eligible for SNAP benefits are deprived of essential subsistence benefits to which they are entitled until HRA processes their cases and issues these critical benefits. That same month, in August 2022, HRA failed to timely process over *one-third* of Cash Assistance applications. By the end of December 2022, over 28,000 Cash Assistance/SNAP applications were overdue and, of these, 5,711 of these were overdue dating back to September 2022. Through no fault of their own, Plaintiffs do not receive the benefits to which they are entitled.

5.      HRA also fails to allow households to recertify their eligibility for benefits— which they must do regularly in order to continue to receive benefits. Thousands of New York City households receiving SNAP and Cash Assistance benefits discover their benefits have stopped because Defendants fail to process the recertification paperwork required to continue those benefits. This occurs without notice or explanation—these households simply stop receiving benefits. During the unlawful delay until HRA gets around to processing their cases and issuing their benefits, these households receive no substitute benefits or food.

6.      Second, HRA fails to maintain a functional system to allow those seeking SNAP and Cash Assistance benefits to apply or recertify for those benefits.

7.     Thousands of low-income New Yorkers go without SNAP and cash benefits to which they are entitled because their applications and recertifications fall through the cracks of Defendants' broken automated administrative processing systems. Both applications and recertifications are impeded and blocked altogether by the online processing system, and there are no reliable and accessible alternatives to the online system. Even when households are able to submit documents, those documents are often lost or ignored, and household members cannot reach the agency via the outdated and overwhelmed central phone line. Further, HRA fails to schedule required eligibility interviews and to provide accessible and reliable processes by which households can complete required eligibility interviews.

8.     Plaintiffs bring this action on behalf of themselves and other low-income New York City residents, to challenge Defendants' systemic failures that deprive eligible households of SNAP and Cash Assistance benefits to which they are entitled.

## JURISDICTION AND VENUE

9.     This action is brought under 42 U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

10.     Jurisdiction is conferred by (a) 28 U.S.C. § 1331, which provides for jurisdiction in the United States district courts over civil actions arising under the Constitution, laws, or treaties of the United States; (b) 28 U.S.C. § 1343(a)(3), which provides for jurisdiction in the United States district courts over civil actions to redress deprivation of rights secured by the Constitution of the United States; and (c) the principles of pendent jurisdiction, including 28 U.S.C. § 1367.

11.     Venue is proper in this court pursuant to 28 U.S.C. § 1391.

12.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

13.     Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure and by the Court's equitable authority.

## PARTIES

14.     Named Plaintiff Maria Forest lives in Brooklyn, New York.

15.     Named Plaintiff Larysa Nazarenko lives in Brooklyn, New York.

16.     Named Plaintiff Svitlana Antoshchenko lives in Brooklyn, New York.

17.     Named Plaintiff Glennice Simon lives in Brooklyn, New York.

18.     Defendant City of New York is a municipal corporation organized pursuant to the laws of the State of New York and is a city social services district responsible for the assistance and care of any person in its territory "who is in need of public assistance and care which he is unable to provide for himself." NY Soc. Serv. Law § 62(1); *see also* N.Y. Soc. Serv. Law § 56.

19.     Defendant Gary Jenkins is the Commissioner of the New York City Department of Social Services/Human Resources Administration ("HRA"), the executive agency of the City of New York which has responsibility for the operation and administration of the SNAP and Cash Assistance programs for New York City residents. He is sued in his official capacity.

20.     Defendant Lisa Fitzpatrick is the Administrator of the New York City Human Resources Administration ("HRA"), the executive agency of the City of New York within the Department of Social Services which has responsibility for the operation and administration of the SNAP and Cash Assistance programs for New York City residents. She is sued in her official capacity.

## CLASS ACTION ALLEGATIONS

21.     Plaintiffs bring this action on behalf of the Class of all New York City residents who, since March 19, 2020, applied or recertified, attempted to apply or recertify, are applying or recertifying, or will apply or recertify for SNAP and/or Cash Assistance benefits; and for whom

4

HRA has not or will not timely process such applications or recertifications, or who have been or will be unable to complete their applications or recertifications due to HRA's systems, policies, practices, and procedures.

22.     The Class is so numerous that joinder of all members is impracticable. Each month, thousands of households attempt to apply or recertify for SNAP and/or Cash Assistance benefits.

23.     As more fully referenced in paragraphs 113–16 of the Complaint, HRA's data reveal that the agency's SNAP Application Timeliness rate—defined as application processing completed by the agency in the federally required 30-day timeframe—was only 60.1 percent for the City fiscal year 2022 (the year ending June 30, 2022) and only 49 percent in August 2022.

24.     HRA has failed to timely process the SNAP and Cash Assistance applications and recertifications of thousands of individuals, resulting in Plaintiff Class members suffering delays in the receipt of their benefits. Data from HRA reveal that the processing delays are extensive. As of August 2022, HRA failed to timely process over one-third of Cash Assistance applications, a timeliness rate of 65.4 percent. And as of December 28, 2022, over 28,000 Cash Assistance/SNAP applications were overdue, and of these, 5,711 of these were overdue dating back to September 2022.

25.     Because many members of the Plaintiff Class are unable to complete applications and recertifications for SNAP and/or Cash Assistance benefits each month due to flaws in Defendants' policies, procedures, and systems, the identity of many Plaintiff Class members is unknown to Plaintiffs and, therefore, joinder is impracticable.

26.     There are numerous questions of fact and law common to the Plaintiff Class, including whether:

a)  Defendants are failing to process initial applications and recertifications for SNAP and/or Cash Assistance benefits pursuant to the timeframes required by law; and

b)  Defendants are using systems that impose barriers that inhibit or prevent SNAP and/or Cash Assistance benefit households from completing applications and required recertifications in order to receive the SNAP and/or Cash Assistance benefits to which they are lawfully entitled.

27.  The Named Plaintiffs' claims are typical of the claims of the Plaintiff Class in that all of the Named Plaintiff Class Representatives have either (1) sought to apply or recertify for SNAP and/or Cash Assistance and did not have their claims processed in a manner to ensure timely receipt of SNAP and/or Cash Assistance benefits; or (2) have been prevented from applying and/or recertifying because of flaws in HRA's policies, procedures, and systems.

28.  Declaratory and injunctive relief are appropriate with respect to the Class as a whole because Defendants have acted on grounds applicable to the Class.

29.  The Named Plaintiffs and the proposed Plaintiff Class are represented by the Legal Aid Society, the New York Legal Assistance Group, and Dechert LLP, whose attorneys are experienced in class action litigation and will adequately represent the Class.

30.  A class action is superior to other available methods for a fair and efficient adjudication of this matter in that the prosecution of separate actions by individual Plaintiff Class members would unduly burden the Court and create the possibility of conflicting decisions.

## STATUTORY AND REGULATORY SCHEME

31.  A web of federal and state statutes and regulations establishes Defendants' obligations to ensure that eligible New Yorkers can apply for and complete recertifications for SNAP and Cash Assistance benefits. This framework also establishes clear timelines under which Defendants must process these recertifications and applications.

6

**The Supplemental Nutrition Assistance Program ("SNAP") Program**

32.     In 1964, Congress established the federally funded, state-administered Food Stamp Program in order to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households," and to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011; *see also* 7 C.F.R. § 271.1.

33.     In 2008, this federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program, and the federal Food Stamp Act was renamed the Food and Nutrition Act of 2008 ("SNAP Act"). Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001–02, 122 Stat. 1651, 1853-59 (2008).

34.     Regulations promulgated by the Food and Nutrition Service of the United States Department of Agriculture ("USDA") implement the SNAP Act, applicable to all agencies administering SNAP programs. *See* 7 U.S.C. §§ 2013(c); 2020 (e)(6)(A).

35.     SNAP eligibility is restricted to low-income households whose net income falls below the federal poverty line. 7 U.S.C. § 2014(c); 7 C.F.R. § 273.9(a)(2). In 2022, the federal poverty line is $1,133 per month for a single adult, and $1,920 for a family of three. *See Upstate and NYC – Updated Supplemental Nutrition Assistance Program (SNAP) Standards for October 2022*, New York State Office of Temporary and Disability Assistance ("OTDA") (Sep. 22, 2022) *available at* https://otda.ny.gov/policy/gis/2022/22DC088.pdf.

36.     The maximum SNAP benefit is adjusted on an annual basis by USDA each October. For the period October 1, 2022, through September 30, 2023, the maximum monthly benefit for one person is $281, and for a family of three is $740. 7 C.F.R. § 273.9(a)(3); *see also*

*SNAP-Fiscal Year 2023 Cost-of-Living-Adjustments*, Food & Nutrition Serv. (Aug. 9, 2022) *available at* https://www.fns.usda.gov/snap/fy-2023-cola.

37.     Although SNAP is a federally funded program, state agencies are responsible for administering the benefit within each state. 7 U.S.C. § 2020 (a)(1); 7 C.F.R. § 271.4.

38.     In New York State, local social service districts—including Defendant City of New York and its mayoral agency—HRA are the administering agencies tasked with implementing the SNAP program under state law. N.Y. Soc. Serv. Law § 95(3); *see also* N.Y. Soc. Serv. Law §§ 2(10) & 56, 61-62; New York City, N.Y., Charter §§ 601–604.

39.     The New York Social Services Law and the regulations of the New York State Office of Temporary and Disability Assistance ("OTDA") also include provisions related to the administration of the SNAP program in New York.

### A.     SNAP Processing Deadlines

40.     SNAP administering agencies must provide SNAP benefits to eligible applicants as soon as possible but no later than 30 calendar days after the application is submitted. 7 U.S.C. § 2020(e)(3); 7 C.F.R. § 273.2 (g)(i). The length of time SNAP administering agencies have to deliver SNAP benefits to eligible households is measured from the date the application is filed in the SNAP office. 7 C.F.R. § 273.2(g).

41.     Additionally, households in immediate need must be provided benefits no later than 7 days after the date of application. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2 (i). This expedited service is available to households with less than $150 in monthly gross income and less than $100 in liquid resources; households whose combined monthly gross income and liquid resources are less than their monthly rent and utilities; and households consisting of destitute migrant or seasonal farmworkers with less than $100 in liquid resources. 7 U.S.C. § 2020(e)(9)(A)(i); 7 C.F.R. § 273.2(i).

42.     SNAP administering agencies must screen all SNAP applicants to determine if they meet the criteria for issuance of expedited SNAP benefits. 7 U.S.C. § 2020(e)(9), 7 C.F.R. § 273.2(i)(2).

**B.      Initial Applications for SNAP Benefits**

43.     SNAP administering agencies must provide "timely, accurate, and fair service to applicants for, and participants in" the SNAP program. 7 U.S.C. § 2020(e)(2)(B)(i).

44.     Specifically, SNAP administering agencies must permit applicants to file an application for SNAP benefits on the first day that households contact their local SNAP administering agency. Indeed, SNAP administering agencies must "encourage" applicants to file an application the same day the household or its representative contacts the SNAP office in person or by telephone and expresses interest in obtaining SNAP or expresses concerns that indicate food insecurity. 7 U.S.C. § 2020(e)(2)(B)(iii); 7 C.F.R. § 273.2(c)(2)(i); *see also id.* § 273.2(c)(1)(ii).

45.     SNAP households may file an application by submitting forms in person, through an authorized representative, by mail, by completing an online application, or by fax or telephone or "other electronic transmission." 7 C.F.R. § 273.2(c)(1)(i).

46.     All SNAP households have the right to apply in writing; SNAP administering agencies shall not deny or interfere with a household's right to apply for SNAP in writing. 7 C.F.R. § 273.2 (c)(1)(ii).

47.     SNAP administering agencies must make application forms "readily accessible" to potentially eligible applicants and must make paper applications "readily accessible and available" even if the administering agency also accepts applications through other means. 7 C.F.R. §§ 273.2(c)(3)(i)-(ii).

48.     Regardless of the type of system the SNAP administering agencies use, agencies must provide a means for applicants to immediately file an application that includes only their name, address, and signature. 7 C.F.R. § 273.2(c)(3)(i)

49.     Where an applicant requests an application by telephone, SNAP administering agencies must mail an application form to that household on the same day the telephone request is made. 7 C.F.R. § 273.2(c)(2)(i).

**C.     SNAP Applications: Eligibility Interviews**

50.     Once a household has submitted an application for SNAP benefits, SNAP administering agencies must conduct an interview of that household to determine the household's eligibility for SNAP benefits and must verify certain information related to their eligibility, such as their income, expenses, and identity. 7 C.F.R. §§ 273.2(d)(1), (f).

51.     SNAP administering agencies must either interview SNAP applicants on the day they submit their application or must schedule an interview as promptly as possible to ensure eligible households receive an opportunity to participate within 30 days after the application is filed. 7 C.F.R. § 273.2(e)(3).

52.     SNAP administering agencies must inform each applicant of the opportunity for a face-to-face interview at the time of application and recertification and grant a face-to-face interview to any household that requests one at any time, even if the State agency has elected the option to routinely provide telephone interviews. 7 C.F.R. § 273.2(e)(2)(i).

53.     If a SNAP applicant misses a scheduled interview, the SNAP administering agency must notify the applicant that the applicant is responsible for rescheduling the interview. If the applicant contacts the administering agency within the 30-day period following submission of their application, the administering agency must reschedule the interview. Even if the applicant fails to appear for the first scheduled interview, the administering agency may not deny

10

an application because the applicant missed an interview prior to the 30th day after it is filed. 7 C.F.R. § 273.2(e)(3).

54.     SNAP administering agencies may not deny an applicant SNAP benefits based on a refusal to cooperate with the interview requirement unless the household is able to cooperate with that requirement but has demonstrated that it will not. A household cannot be denied for merely failing to appear for an interview. 7 C.F.R. § 273.2(d)(1).

**D.     SNAP Applications: Eligibility Verification**

55.     As part of the application process, SNAP applicants must also verify certain information related to their eligibility, such as their income, expenses, and identity. At the time of application, SNAP administering agencies must provide "a clear written statement explaining what acts the household must perform to cooperate in obtaining verification and otherwise completing the application process." 7 U.S.C. § 2020(e)(3). In addition, the notice must inform the household of the agency's duty to assist the household in obtaining required verification and must include "examples of the types of documents the household should provide and explain the period of time the documents should cover." 7 C.F.R. § 273.2(c)(5), (f)(5).

56.     SNAP administering agencies must give applicants at least 10 days to provide the required verification information. 7 C.F.R. §§ 273.14(b)(4), 273.2(f).

57.     Once an applicant has completed the above-described steps—submitting an application, participating in an interview, and submitting verification documentation—the SNAP administering agency must process that application and, if the applicant is eligible, begin to provide SNAP benefits to that applicant.

**E.     SNAP Recertifications: Applications for Recertification**

58.     SNAP benefits do not last indefinitely. SNAP administering agencies must assign SNAP recipients to a "certification period"—a specified period of time for which the recipient will continue to receive monthly SNAP benefits. 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.10(f).

59.     For a household to continue to receive uninterrupted SNAP benefits after the expiration of their certification period, a SNAP household must complete *another* SNAP application—called a "recertification"—and be found eligible within certain deadlines. 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14 (a).

60.     As with initial SNAP applications, administering agencies must comply with timelines for processing recertifications and providing SNAP benefits.

61.     If a household submits an application for recertification by the fifteenth day of the last month of the certification period and is still eligible for SNAP benefits, the SNAP administering agency must ensure that the household's benefits continue uninterrupted. 7 U.S.C. § 2020(e)(4); 7 C.F.R. §§ 273.14(c)(2), (d).

62.     If an eligible household files an application for recertification before the end of the certification period but the recertification process cannot be completed within 30 days after the date of application because of administering agency fault, the agency must continue to process the case and provide a full month's allotment for the first month of the new certification period. 7 C.F.R. §§ 273.14(e)(2), (d).

**F.    SNAP Recertification Process: Application**s**, Interview**s**, and Verification**s

63.     The SNAP recertification process includes the same three steps as an initial SNAP application: an application; an interview; and verification.

64.     Before the start of the last month of the household's certification period, the SNAP administering agency must provide the household with a Notice of Expiration listing the date the household's certification period expires, advising the household that it must submit an

application for recertification in order to renew its eligibility, and stating the date by which the household must submit the application for recertification in order to receive uninterrupted SNAP benefits (the 15th day of the last month of the certification period). 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14(b)(1).

65.     The SNAP administering agency must conduct interviews for recertification consistent with the interview requirements set forth *supra* at ¶¶ 50–54. Thus, as with initial SNAP applications, if a SNAP applicant misses a scheduled interview, the SNAP administering agency must notify the applicant that they are responsible for rescheduling the interview. If the applicant contacts the administering agency and requests an interview, the SNAP administering agency must schedule one. 7 C.F.R. §§ 273.14(b)(3), 273.2(e)(3). And the administering agency must schedule interviews so that the household has at least 10 days after the interview to provide verification before the certification period expires. 7 C.F.R. § 273.14(b)(3)(iii).

66.     The SNAP administering agency must provide recertifying households with notices of required verifications and the due date for such verifications and give the household at least 10 days to provide the required information. 7 C.F.R. § 273.14(b)(4).

**G.     Notice and Hearing Rights Pertaining to SNAP Applications and Recertifications**

67.     SNAP administering agencies must provide any household aggrieved by an action of the agency that affects the participation of the household in SNAP with the opportunity for a fair hearing to challenge that action. 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15(a).

68.     When SNAP administering agencies propose to reduce or terminate a household's SNAP benefits during its certification period, the agency must provide the household with timely and adequate notice and the opportunity for a fair hearing and continued benefits until the hearing decision is issued. 7 U.S.C. § 2020(e)(10) (implemented by 7 C.F.R. §§ 273.13, 273.15).

Such notices of a reduction or termination of benefits must explain in easily understandable language, *inter alia*, the proposed action; the reason for the proposed action; the household's right to request a fair hearing; and the availability of continued benefits; and they must be mailed out at least ten days before the date upon which the adverse action becomes effective. 7 U.S.C. § 2020(e)(10); 7 C.F.R. §§ 273.13(a)(1)-(a)(2).

69.     SNAP administering agencies must provide applicants with a written notice of eligibility or denial as soon as a determination is made, "but no later than 30 days after the date of the initial application." 7 C.F.R. § 273.10(g)(1).

70.     Furthermore, SNAP administering agencies must provide households that have filed an application by the 15th of the last month of their certification period with either a notice of eligibility or a notice of denial by the end of their current certification period if the household has complied with all recertification requirements. 7 C.F.R. § 273.10(g)(2).

71.     When SNAP administering agencies delay processing a household's initial application or application for recertification, the agency must send written notice to the household informing it, *inter alia*, that processing of the application has not been completed. 7 C.F.R. §§ 273.2(h), 273.10(g)(1)(iii).

72.     When delay in a household's application or application for recertification is the fault of the SNAP administering agency, the agency must take immediate corrective action. 7 C.F.R. § 273.2(h)(3)(i).

**The Cash Assistance Program**

73.     Separately from the federal benefits available through SNAP, New York State has established two Cash Assistance programs: Family Assistance, which is available to families with a child under 18 and to pregnant women; and Safety Net Assistance Cash Assistance, which is available to adult-only households and households with children that are not able to receive

Family Assistance. N.Y. Soc. Serv. Law §§ 158, 349. These programs are collectively referred to as "Cash Assistance."

74.     The New York Social Services Law and the regulations of OTDA also include provisions related to the administration of Cash Assistance in New York.

75.     Like SNAP benefits, Cash Assistance benefits are administered by local social service districts in the state—including Defendant City of New York and its mayoral agency, HRA. N.Y. Soc. Serv. Law § 95(3); *see also* N.Y. Soc. Serv. Law §§ 2(10), 56 & 61-62; New York City, N.Y., Charter §§ 601–604.

76.     For a household to be eligible for Cash Assistance, the Cash Assistance administering agency must determine that the household's assistance does not exceed the "standard of monthly need." N.Y. Soc. Serv. Law § 131-a(1). In New York City, the typical standard of monthly need amount is $789.00 for a family of three and $398.10 for a single adult. N.Y. Soc. Serv. Law §§ 131-a(2)(a-4), (3)(c), (3-d); 18 N.Y.C.R.R. § 352.3.

    **A.     Initial Applications for Cash Assistance Benefits**

77.     Like SNAP benefits, an applicant for Cash Assistance must complete an initial application, an interview, and satisfy verification requirements.

78.     Cash Assistance applications must be acted on promptly and without delay. 18 N.Y.C.R.R. §§ 350.3(b), 351.1(c)(1). Social services districts must reach a conclusion on an applicant's eligibility for Cash Assistance within 30 days after the initial application is filed. N.Y. Soc. Serv. Law § 158(4) (Safety Net Assistance); 18 N.Y.C.R.R. §§ 369.6(a) (Family Assistance).

79.     As with SNAP applications, an interview is required to establish eligibility for Cash Assistance. Cash Assistance interviews "must ordinarily be scheduled within seven

working days, except when there is indication of emergency need, in which case the interview must be held at once." 18 N.Y.C.R.R. § 350.3(c).

80.     Cash Assistance applicants may apply simultaneously for SNAP benefits, in which case the SNAP eligibility interview shall be conducted at the same time as the interview for Cash Assistance and if not conducted on the day they apply, must be scheduled on a specific day and at a specific time. 18 N.Y.C.R.R. § 387.7(a).

81.     The Cash Assistance administering agency may provide the option to allow an interview via telephone or other digital means—but that option must be "at the request of the applicant or recipient." N.Y. Soc. Serv. Law § 134-a (3); 18 N.Y.C.R.R. § 350.3(c).

82.     If the Cash Assistance administering agency elects to provide telephone or other digital interview options, each applicant or recipient must be notified in writing of the time and date of the interview and given the option to request their preferred interview method. N.Y. Soc. Serv. Law § 134-a (3); 18 N.Y.C.R.R. § 387.7 (a); *see also* OTDA 22-ADM-10 at 2-3 (July 19, 2022) *available at* https://otda.ny.gov/policy/directives/2022/ADM/22-ADM-10.pdf.

83.     As with SNAP benefits, applicants for Cash Assistance must also verify certain information related to their eligibility, such as their income, expenses, and identity and the administering agency has a duty to assist with securing such verification. 18 N.Y.C.R.R. §§ 351.2, 350.7.

84.     Households who apply simultaneously for Cash Assistance and SNAP benefits must have their applications processed for SNAP purposes in accordance with SNAP procedural, timeliness, notice, and fair hearing requirements. Any delays in processing of the application for Cash Assistance may not result in any delay in the processing of the SNAP application. 7 C.F.R. 273.2(j)(1)(iii).

**B.      The Cash Assistance Recertification Process**

85.      As with SNAP benefits, households that receive Cash Assistance benefits must recertify their eligibility for these benefits at specified intervals in a process known as recertification. The process includes a reevaluation and reconsideration of all factors of need and eligibility. 18 N.Y.C.R.R. § 351.20.

86.      To recertify Cash Assistance households, Cash Assistance administering agencies must, *inter alia*, (1) allow recipients to complete a recertification form, (2) interview the recipient, and (3) verify the recipient's continued eligibility. 18 N.Y.C.R.R. § 351.20.

87.      Recertification interviews can be conducted either by an in person, face-to-face interview, or by telephone or by other digital means, at the request of the recipient. 18 N.Y.C.R.R. § 351.22(a). If a recipient fails to participate in an interview or comply with an agency-approved alternative recertification requirement without "good cause," the Cash Assistance administering agency must send a 10-day notice of proposed discontinuance of assistance. 18 N.Y.C.R.R. § 351.22(b). If the recipient appears for a face to-face, telephone, or digital interview during the 10-day notice period, an interview must be arranged. If it is determined that the recipient is eligible for continued assistance, the 10-day notice of proposed discontinuance must be nullified. 18 N.Y.C.R.R. § 351.22(b).

88.      If the recipient does not respond within this 10-day period, the case shall be closed as of the end of the 10-day period. Any request for assistance made after a case is closed must be considered a new application. 18 N.Y.C.R.R. § 351.22(b).

89.      An applicant is exempt from complying with Cash Assistance recertification requirements if the applicant establishes that good cause exists. 18 N.Y.C.R.R. § 351.26(a). The applicant is responsible for notifying and informing the Cash Assistance administering agency of the reasons for failing to comply with a recertification eligibility requirement, and to furnish

evidence in support of any claim of good cause. 18 N.Y.C.R.R. § 351.26(b). "Good cause" exists

when a physical or mental condition prevents compliance, the failure to comply is directly

attributable to social services district error, or extenuating circumstances beyond the control of

the household prevent the household from being reasonably expected to comply. 18 N.Y.C.R.R.

§ 351.26(a)(1)-(3).

### SNAP AND CASH ASSISTANCE ADMINISTRATION IN NEW YORK CITY

90.     HRA is required to comply with federal statutory requirements for processing

SNAP benefits—including the statutory timeframes for acting upon SNAP applications and

recertifications. When an applicant first applies for SNAP benefits, they do not receive those

benefits until HRA has processed their application. Similarly, when HRA fails to meet statutory

timelines to recertify a household for SNAP benefits, the SNAP benefits stop on the last date of

the certification period.

91.     Defendants the City of New York, Jenkins and Fitzpatrick—who run HRA—and

the Department of Social Services which oversees HRA, are therefore responsible for ensuring

that HRA meets its legal obligations.

92.     For a period of time after COVID-19 struck New York City in March 2020, HRA

was not required to comply with statutory requirements to conduct SNAP recertifications

because the agency received temporary waivers from USDA pursuant to the Families First

Coronavirus Response Act (P.L. 116-127) to suspend recertification requirements by extending

SNAP certification periods to ensure that families could continue participating in or apply for

SNAP during the public health and economic crisis. *See New York: COVID-19 Waivers and

Flexibilities*, Food & Nutrition Serv. (last updated Jan. 4, 2023) *available at*

https://www.fns.usda.gov/disaster/pandemic/covid-19/new-york.

93.     These original waivers extending recertifications have now expired. *See 21*

*TA/DC047 Upstate and New York City*, OTDA, at 3 (June 30, 2021) *available at*

https://otda.ny.gov/policy/gis/2021/21DC047.pdf ("The availability of six-month SNAP

certification period extension waivers for cases expiring through March 31, 2021 described in

GIS 20 TA/DC101 have not been extended."). Although HRA has received subsequent waivers

permitting the agency to extend certain certification periods for specific periods of time, it has

not received subsequent blanket waivers extending certification periods for all SNAP recipients.

Therefore, HRA remains responsible for timely recertifying thousands of SNAP cases each

month as required by federal law.

94.     But HRA is failing to process thousands of SNAP cases on time each month.

**A.     Current Application and Recertification Process at HRA**

95.     HRA maintains one process for handling both SNAP and Cash Assistance

applications and recertifications, with limited exceptions.

96.     HRA policy provides that households who apply and recertify for SNAP and/or

Cash Assistance can apply or recertify: (1) in person at an HRA office; (2) through HRA's online

system, known as ACCESS HRA; (3) by requesting an application form, completing it, and

submitting it by mail, fax, or in person at an HRA office; (4) by telephone; or (5) by home visit,

if necessary. *See SNAP Benefits and COVID-19*, HRA, https://www.nyc.gov/site/hra/help/snap-

benefits-food-program.page; *Coronavirus (COVID-19) Alert*, HRA *available at*

https://portal.311.nyc.gov/article/?kanumber=KA-03115 (last visited Jan. 27, 2023); *see also*

*Center Director Memorandum 20-19*, HRA  (July 24, 2020), *available at*

http://onlineresources.wnylc.net/nychra/docs/cd__20-19.pdf. HRA administers SNAP and Cash

Assistance through three types of centers located in the five boroughs of New York City: SNAP-

only Centers, HIV/AIDS Services Administration Centers ("HASA Centers"), and Benefits

Access Centers.

97. SNAP-only Centers process and manage initial and ongoing eligibility for

applicants seeking only SNAP benefits ("SNAP-only cases").

98. Benefits Access Centers process and manage initial and ongoing eligibility for

joint Cash Assistance and SNAP cases as well as Cash Assistance-only cases.

99. HASA Centers process and manage initial and ongoing eligibility for joint Cash

Assistance and SNAP cases as well as Cash Assistance-only cases, and provide additional

services, for individuals living with HIV/AIDS and members of their households.

100. Those households who apply for both Cash Assistance and SNAP benefits apply

via the same joint application.

101. Applicants who apply online do so via ACCESS HRA, a program that allows

users to apply and recertify for HRA-administered benefits, including SNAP and Cash

Assistance, via website or mobile phone application.

102. Applicants are encouraged to submit documents required to complete an

application or recertification by uploading them on the ACCESS HRA Mobile App. *See SNAP*

*Benefits and COVID-19*, HRA *available at* https://www.nyc.gov/site/hra/help/snap-benefits-

food-program.page.

103. Neither ACCESS HRA nor the ACCESS HRA Mobile App provide live support

to users by telephone, text or otherwise. Users are instructed to email ACCESS HRA. *See*

*ACCESS HRA Frequently Asked Questions*, HRA, https://www.nyc.gov/site/hra/help/access-hra-

frequently-asked-questions.page.

**B.**     **HRA Interview and Verification Processes for SNAP and Cash Assistance Benefits**

104.    SNAP-only households utilize an interview process known as "On Demand," by which applying or recertifying households call HRA to complete mandatory interviews. *See Center Director Memo 22-12*, HRA (May 23, 2022), *available at* http://onlineresources.wnylc.net/nychra/showquestion.asp?fldAuto=2943. ("The purpose of this Center Directive (CD) memorandum is to inform Non-Cash Assistance (NCA) Supplemental Nutrition Assistance Program (SNAP) staff that On-Demand SNAP telephone interviews will resume on June 1, 2022.")

105.    Households seeking both SNAP and Cash Assistance benefits are not permitted to call HRA to receive an interview on demand. They also do not receive interview appointments for in person or telephone interviews. Instead, HRA policies provide that an HRA staffer will telephone the household to conduct an interview over the phone. *See Policy Bulletin 21-09-ELI*, HRA, at 3 (Feb. 28, 2021) *available at* http://onlineresources.wnylc.net/nychra/docs/pb__21-09-eli.pdf. However, HRA does not notify households of the specific time, or even the specific date, when HRA will call to conduct the interview. Instead, the recertification form sent to these households merely informs them that they will receive a call within 10 days. *Id.*

106.    HRA policy provides that HRA will request all necessary documentation to establish eligibility at the interview. HRA then provides a form listing the required documentation, which is available to the participant.

107.    HRA policy provides that the agency has a duty to assist applicants with obtaining documentation needed to verify eligibility and that HRA staffers have an obligation to determine if a document is already on file. *See See Policy Bulletin 16-04*, HRA (Jan. 8, 2016) *available at*

http://onlineresources.wnylc.net/nychra/docs/16-04-ope.pdf. In reality, HRA staff do not assist applicants with obtaining documentation.

## DEFENDANTS' FAILURES TO TIMELY PROCESS SNAP AND CASH ASSISTANCE APPLICATIONS AND RECERTIFICATIONS DEPRIVE NEW YORK CITY HOUSEHOLDS OF ESSENTIAL SUBSISTENCE BENEFITS

108.    Defendants are depriving SNAP and Cash Assistance households of the SNAP and Cash Assistance benefits to which they are entitled in two major ways: (1) by failing— entirely due to agency delay—to meet SNAP and Cash Assistance application and recertification processing deadlines, and (2) by failing to maintain functional systems to allow SNAP and Cash Assistance applicants to complete applications and recertification for these crucial benefits. Both failures have the same result: Households are not receiving benefits to which they are entitled, resulting in hunger and immense distress.

### A.    HRA Fails to Comply with SNAP and Cash Assistance Processing Deadlines

109.    Defendants have engaged in a consistent pattern of severe non-compliance with laws requiring the processing of initial applications and mandatory rectification applications for SNAP and Cash Assistance benefits within the applicable timeframes. As a result, they deprive New York City families of benefits to which they are entitled.

#### i.    HRA's Failure to Timely Process SNAP Applications and Recertifications

110.    HRA fails to process SNAP applications and applications for recertification within the timeframes required by federal statute and regulations. When HRA fails to timely process a household's SNAP recertification, that household's benefits stop.

111.    As a result of HRA's failure to process SNAP recertifications, and in contravention of their obligation to do so, *see supra* at ¶¶ 55-72, thousands of New York City

households who rely on SNAP benefits have lost these benefits, through no fault of their own, despite continuing need and eligibility.

112.    In addition to failing to process SNAP *recertifications*, HRA is also failing to process SNAP *applications*. Thousands of New York City households who have applied for SNAP benefits have not had their applications processed. As a direct result of HRA's inaction, these households are deprived of benefits to which they are legally entitled, which they desperately need to feed themselves and their families.

113.    Defendants' own data reporting demonstrates this severe non-compliance with SNAP processing deadlines.

114.    For the City fiscal year 2022 (the year ending June 30, 2022), HRA data reveal that SNAP Application Timeliness—defined as application processing completed by the agency in the federally required 30-day timeframe—was only 60.1%. *See Dynamic Mayor's Management Report*, New York City Mayor's Office of Operations, at 21 (last updated Nov. 7, 2022) *available at* https://dmmr.nyc.gov/city-services/health-and-human-services/human-resources-administration/4116 ("Mayor's Management Report").

115.    HRA has admitted its deficient performance, noting in the Mayor's Management Report that the Fiscal Year 2022 SNAP Application Timeliness rate of 60.1% represented a decrease of 30 percentage points compared to the prior year. *Id.*

116.    Further, HRA's noncompliance with the SNAP application processing timelines is only getting worse: In July 2022 the SNAP Application Timeliness rate the was only 51.2% and in August 2022, the SNAP Application Timeliness rate was only 49%. Mayor's Management Report.

117.   When HRA fails to meet statutory timelines to recertify a household for SNAP benefits, the SNAP benefits stop on the last date of the certification period; no new benefits are issued until the recertification is complete. However, despite the agency's legal obligation to send notices to SNAP households when there is agency delay, *see supra* ¶ 71, HRA does not notify households that their SNAP benefits will not be issued because of agency delays. Instead, households that have completed their recertification requirements, simply receive no SNAP benefits at all with no warning whatsoever when HRA has failed to timely process their recertifications. Moreover, these households have no way to learn when their benefits will resume. They are expected to go without benefits—often for extended periods of time—until HRA gets around to completing processing their cases.

> ii.   **HRA's Failure to Timely Process Cash Assistance Applications and Recertifications**

118.   HRA is also deficient in timely processing Cash Assistance applications. Data from HRA reveal that the delays are extensive for cases in which New Yorkers applied for Cash Assistance—including applications in which the applicant sought both Cash Assistance and SNAP benefits (known as CA/SNAP cases), and those in which the applicant sought only Cash Assistance benefits. As of December 28, 2022, over 28,000 Cash Assistance/SNAP applications were overdue and, of these, 5,711 were overdue dating back to September 2022.

119.   With respect to timeliness for Cash Assistance only applications, the data reveal that the application timeliness rate for Cash Assistance-only was only 73.4% for July 2022, and, for the most recent month reported—August 2022—HRA failed to timely process over one-third of Cash Assistance applications, reporting a timeliness rate of 65.4%. Mayor's Management Report.

120.    When HRA fails to process applications for SNAP and Cash Assistance benefits, households desperate for subsistence level benefits are left without them—waiting with no idea when HRA will get around to processing their applications.

### iii.    HRA's Failure to Timely Process Expedited SNAP Benefits

121.    Upon information and belief, HRA is also failing to timely process the most critical cases: those applicant households who are entitled to "Expedited SNAP"—to have their SNAP benefits processed within seven days because they are in immediate need. As discussed *supra* ¶ 41, in order to qualify for expedited processing, these households (a) have less than $150 in monthly gross income and less than $100 in resources, (b) have combined monthly gross income and resources that are less than their monthly rent and utilities, or (c) are destitute migrant or seasonal farmworkers with less than $100 in liquid resources.

122.    Although HRA is required to provide SNAP benefits within seven days of an application for those who meet the criteria for expedited SNAP benefits, the agency repeatedly fails to do so.

### B.    HRA's Dysfunctional Application and Recertification Systems Deprive Households of Essential SNAP and Cash Assistance Benefits

123.    In addition to the processing problems described above, HRA also fails to meet its statutory and regulatory obligations in a second, distinct way: HRA's application and recertification systems and processes are so flawed that they prevent users from timely completing and submitting applications and recertifications, thereby depriving them of SNAP and Cash Assistance benefits to which they are entitled. Thousands of low-income New Yorkers go without benefits because of HRA's broken systems: Their applications and recertifications are impeded and blocked altogether by a complex online processing system; the documents they

25

submit are lost or ignored, and they cannot reach the agency via its outdated, overwhelmed, central phone line.

124.    As discussed *supra* at ¶¶ 45-49; 80, 86, SNAP and Cash Assistance applicants in New York City must (a) complete a form—either an application or a recertification form—and submit that form to HRA, (b) participate in an interview with HRA, and (c) submit verification documents to HRA. HRA's application and recertification processes are breaking down at each of these three steps. As a result, households are unable to recertify and apply for benefits, and so are being prevented from accessing SNAP and Cash Assistance benefits to which they are entitled.

> **i.    Defendants are Systemically Failing to Provide Accessible Means to Submit Applications and Recertifications for SNAP and Cash Assistance Benefits**

125.    As a result of HRA's flawed systems, policies and practices, many households are unable to successfully navigate the first step required to apply or recertify for SNAP and/or Cash Assistance: completing and submitting initial application and recertification forms. When households cannot submit an application or recertification form to HRA, their case does not proceed to the interview stage. If they are new applicants, they are unable to complete their application for benefits; if they are recertifying, their case will be closed for failure to submit a recertification form. 18 N.Y.C.R.R. § 350.4; 18 N.Y.C.R.R. § 351.20(b)(1); *see also* HRA Policy Bulletin 21-09 at 7-8 (describing HRA computer closing codes).

126.    HRA advises households to apply and recertify online using ACCESS HRA, and to go in person to an HRA office only if their "needs cannot be met through ACCESS HRA or over the phone via the HRA information line." *See Important Information About COVID-19 and Your HRA Benefits*, HRA (last updated Jan. 23, 2023) *available at* https://www1.nyc.gov/site/hra/important-information-about-covid-19-and-your-hra-benefits.page

(last visited January 27, 2023). However, all these vehicles for applying and recertifying—utilizing ACCESS HRA, calling Infoline, and going in person to an HRA office—pose significant barriers to households who need to apply or recertify. And unfortunately, there are no accessible alternatives to these methods to applying or recertifying.

127.   First, ACCESS HRA, the online system by which households may apply and recertify for SNAP and Cash Assistance benefits, causes widespread problems for SNAP and Cash Assistance households, preventing households from completing and submitting initial applications and recertifications in a timely manner.

128.   Despite its name, ACCESS HRA is inaccessible to many households because they lack internet access or digital skills, or they encounter other barriers related to disabilities or language access. As of March 2020, about 30 percent of New York City residents, or 2.2 million individuals, lacked broadband Internet access, including 350,000 who only access internet through cell phones or tablets. *See* Scott Stringer, Census and the City: Overcoming New York City's Digital Divide in the 2020 Census, Office of the New York City Comptroller, at 5 (July 2019) *available at* https://comptroller.nyc.gov/wp-content/uploads/documents/Census_and_ The_City_Overcoming_NYC_Digital_Divide_Census.pdf.

129.   Even applicants with access to the internet are often unable to successfully navigate ACCESS HRA because they lack the technical skills necessary to complete an online application or recertification on their own. Because HRA does not provide any real-time support for ACCESS HRA, those households who encounter ACCESS HRA barriers are unable to receive real-time help from HRA to overcome these barriers. Neither ACCESS HRA nor the ACCESS HRA Mobile App provide live support to users by telephone, text, or otherwise. *See supra* ¶ 103.

130.    Those who can access ACCESS HRA also face barriers. Many households encounter flaws in the ACCESS HRA software; some are affirmatively blocked from recertifying and given misinformation. For example, some households log in to ACCESS HRA after receiving a notice instructing them to recertify online, only to receive a system message informing them that they cannot recertify. In some cases, households that attempt to recertify on ACCESS HRA are advised by the system that "no recertification is due," even though their recertification *is* due and if it is not completed, the household will lose benefits. When these households rely on the information provided by ACCESS HRA and therefore do not take any other steps to recertify, their cases close for failure to recertify.

131.    Households whose cases close for failure to recertify after they rely on the ACCESS HRA message informing them that "no recertification is due" are not made whole. Even if they later manage to get their cases reopened, they suffer a gap in benefits. HRA does not pay them retroactive benefits to the date their cases were closed for failure to recertify.

132.    Further, HRA instructs applicants who cannot use ACCESS HRA to call Infoline for help applying or recertifying for benefits. However, due to the phone system's limited capacity, callers are subjected to long wait times and dropped calls because of system overload. Even if a caller gets through, Infoline does not provide support for ACCESS HRA: Callers who ask for help from Infoline are told to go to an HRA office to apply or recertify.

133.    Although HRA policy provides that applications and recertifications can be completed over the phone, Infoline agents do not accurately advise applicants of that option.

134.    Households who encounter barriers to using ACCESS HRA and Infoline cannot necessarily resolve these issues by going to HRA offices, because even those applicants who go to apply or recertify in person are directed to computer stations where they are instructed to use

ACCESS HRA to apply or recertify on their own. *See Policy Bulletin 21-09*, HRA, at 6 (Feb. 28, 2021), *available at* http://onlineresources.wnylc.net/nychra/docs/pb__21-09-eli.pdf (discussing revisions to Cash Assistance recertification due to COVID-19). In many cases, HRA lacks adequate staffing to assist individuals at computer stations who are attempting to apply or recertify for benefits. Those who are unable to navigate the computer stations at HRA offices are given paper forms and sent home to complete them on their own without assistance.

135.   Further exacerbating these problems is the fact that HRA's paper forms are byzantine, and so it is difficult to understand and complete HRA paper forms without assistance. It is not easy to discern which parts of these forms must be completed, what the questions mean and even where to sign the document. For instance, the SNAP and Cash Assistance application form requires three signatures on three different pages of the document (pages 1, 4 and 24). *See* New York State Application for Certain Benefits and Services LDSS form 2921 *available at* https://otda.ny.gov/programs/applications/2921.pdf. And, without going in person to an HRA office, it is increasingly difficult for households to even obtain a paper form, because HRA no longer mails these paper recertification forms to households that receive both Cash Assistance and SNAP benefits when they are required to recertify. Instead, HRA directs these households to use ACCESS HRA to complete their recertification form and advises those who lack internet access to call HRA or go in person to a center. *See* HRA Notice W-908T "Don't Lose Your Benefits." As described, these other systems are inaccessible and flawed.

136.   Finally, HRA often fails to record submission of paper forms because HRA does not timely log incoming mail, faxes and paper forms submitted to HRA drop boxes at HRA offices. As a result, households who complete application and recertification forms often experience delays because HRA has failed to timely process these paper forms.

ii.   **Defendants are Systemically Failing to Provide Accessible Means for Households seeking SNAP and Cash Assistance Benefits to Participate in Interviews**

137.   Defendants also fail to maintain functional systems to allow households to successfully complete the second step in applying or recertifying for SNAP and/or Cash Assistance benefits: participating in an interview. Households face the following barriers: (1) Interview calls are unscheduled (not set for a particular timeframe or even a particular day); (2) the calls are often made weeks after the application or recertification form was submitted—delaying continued processing of the application or recertification; 3) the calls can easily be missed or mistaken for spam because many of the calls are made from unidentified phone numbers; 4) the calls cannot be returned and households are instead required to call Infoline—and are often unable to get through. Even when callers do reach Infoline, they are only able to leave a message requesting a call back; they then face the same process all over again.

138.   First, the calls are unscheduled; they are not set for a particular time or date. Despite the legal requirements that phone interviews must be scheduled as promptly as possible for a specific date and time, and that applicants must be given a choice of the form of interview (by phone or in person), HRA fails to provide these options for CA/SNAP households as required by 7 C.F.R. § 273.2(e)(3); 7 C.F.R. § 273.14 (b)(3), and N.Y. Soc. Serv. Law § 134-a (3). Instead, HRA staffers call the household at unscheduled, random times to conduct the interview by telephone.

139.   Second, HRA does not comply with its obligations to conduct these requisite interviews in a timely manner—thereby delaying processing and preventing households from successfully applying or recertifying for benefits. Indeed, some applicants do not receive the recertification interview phone call for weeks after submitting their recertification. Others report not getting calls at all.

140.    Third, these interview calls are easily mistaken for spam calls and are easy to miss. HRA staff often make interview calls from telephones which are not identified as the City of New York, HRA, or DSS. As a result, many applicants do not answer these calls because they assume that calls from unidentified numbers are spam calls. Moreover, households can miss the calls when they run out of cell minutes, are out of cell range, or when they are unable to pick up the phone.

141.    Fourth, the calls cannot be returned. Most of the phones used by HRA staffers to contact households cannot accept incoming calls. As a result, households are given a "rescheduling line" number to call to leave a message that they would like an interview. But the "rescheduling line" number is actually routed to the HRA's dysfunctional, overloaded central call line, Infoline. As discussed *supra* ¶ 132, it is difficult to reach anyone via Infoline due to busy signals, dropped calls, disconnected calls, and long wait times. As a result, many applicants are unable to reach an agent to request another interview call. If applicants are lucky enough to reach an Infoline agent, they do not receive an interview—they are merely put on a list to receive another unscheduled interview call, and the cycle begins all over again.

142.    Moreover, HRA fails to provide meaningful alternatives to telephonic interviews that would mitigate the harm that this nonfunctional system causes. Despite its clear obligations to allow households to elect in person interviews, *see supra* ¶ 87, 96, HRA does not provide households with a choice between an in person or telephone interview. HRA policy provides that even applicants who go in person to Benefits Access Centers to recertify often do not receive in person interviews; instead, they are told they will receive a phone call within 10 days for their interview. *See Policy Bulletin 21-09*, HRA, at 6 (Feb. 28, 2021) *available at*

http://onlineresources.wnylc.net/nychra/docs/pb__21-09-eli.pdf (discussing revisions to Cash Assistance recertification due to COVID-19).

143.    There is no effective way for applicants or recipients to secure an interview or get an appointed date or time for one. HRA either calls at an unscheduled time, without a way for applicants or recipients to reach HRA or remedy a missed call, or HRA does not call at all, and then denies or closes cases due to failure to complete the interview.

144.    Even when applicants appear in person at Benefits Access Centers and ask for an in person interview, HRA often does not honor such requests.

iii.    **Defendants are Systemically Failing to Process Verifications for SNAP and Cash Assistance Applications and Recertifications**

145.     Defendants also fail to perform the third step in the SNAP and Cash Assistance application and recertification process: verification of information needed to establish eligibility. Specifically, HRA fails to process documents that applicants submit to support their applications and recertifications. As a result, households are erroneously denied or have their cases closed for not submitting required documentation.

146.    Households may submit verification documents to HRA in one of four ways: through the ACCESS HRA mobile phone app, by mail, by fax, or in person at an HRA center. None of these methods provides a reliable way for applicants to submit verification materials.

147.    In addition, applicants often do not receive real-time receipts for the documents they submit: They must wait for receipts to be mailed to them after HRA processes the documents. Applicants who go in person to Benefits Access Centers do not receive real-time receipts for documents they have submitted.

148.    When HRA fails to process required documents, a household's case is closed for failure to provide verification. Because of HRA processing delays and errors, many applicants

who have already submitted required documentation nonetheless have their cases closed in error by HRA for alleged failure to submit required verification documentation.

149.    Indeed, HRA acknowledges delays and errors related to reviewing and indexing documents submitted by households. HRA explains on the FAQ page on its website that: "If you submitted your documents to HRA, it is possible that it has been received but it hasn't yet been added to your case file by an HRA worker." *See ACCESS HRA Frequently Asked Questions*, HRA, *available at* https://www.nyc.gov/site/hra/help/access-hra-frequently-asked-questions.page.

150.    Additionally, due to the failures of Infoline and routing applicants to ACCESS HRA, there is no effective way for applicants to communicate with HRA to figure out what documents are still due.

151.    Applicants who attempt to avoid these ACCESS HRA pitfalls by submitting documents in person, by mail, or by fax often fare no better. Indeed, applicants who wish to submit documents in person are directed to scanners to upload the documents via ACCESS HRA. Moreover, even applicants who submit documents in person often do not receive real-time receipts for their submissions. Instead, they must wait for receipts to be mailed to them after HRA processes the documents.

152.    Regardless of what submission method households choose, HRA often denies cases in error for failing to submit required documentation, even though HRA already has the required documentation in its possession. In addition, in many cases, HRA denies or closes cases in error when it has failed to assist households to secure the needed verification and failed to provide households with opportunities to submit other forms of verification to enable them to obtain benefits in a timely manner.

## NAMED PLAINTIFF ALLEGATIONS

**Maria Forest**

153.    Plaintiff Maria Forest is a 71-year-old disabled former home attendant who lives alone in Brooklyn New York.

154.    Ms. Forest speaks, reads, and writes in Polish. She has limited spoken fluency and literacy in English and Russian.

155.    Ms. Forest's monthly income consists of approximately $683 in Social Security Retirement benefits, $231 in Supplemental Security Income, an $87 New York SSI supplement, and a $53 pension from her union.

156.    Her rent is approximately $605 per month. She started receiving SNAP benefits several years ago and received these benefits through September 2022.

157.    In October 2022, Ms. Forest's SNAP benefits were discontinued without notice despite the fact that she timely submitted her recertification form.

158.    Since her SNAP benefits ceased in October 2022, she has been forced to spend money she usually uses for rent and utilities to buy food. As a result, she currently owes back rent and has utility arrears because she has had to redistribute her income to buy food to survive.

159.    Ms. Forest has diabetes and is required to adhere to a diet to enable her to control this condition as much as possible. Since her SNAP was discontinued, she has had to change her diet to eat fewer, different, and less expensive foods. As a result, her blood sugar fluctuates, and she often feels unwell. When her blood sugar is low, she gets very lethargic. She fears that this is dangerous and that she may fall asleep and never wake up.

160.    Ms. Forest's mobility is limited due to a spinal condition from an injury on the job before she retired. She is currently awaiting surgery on her spine. She uses a walker to get

around inside her apartment and a wheelchair for stability when seated. It is difficult for her to navigate outside of her home without losing her balance and falling. As a result, she has not left her home for anything but medical appointments in approximately three years.

161.    Ms. Forest has a home attendant for almost 8 hours a day, seven days a week. Her home attendant runs all neighborhood errands for her.

162.    Ms. Forest regularly uses over-the-counter pain medication to treat the pain from her spinal condition in addition to the medication covered by her health insurance. Since her SNAP benefits were discontinued, she often has had to choose between buying this pain relief medication and buying food.

163.    Occasionally, Ms. Forest's two adult children, who live outside of New York City, have come to her apartment to provide her with meals. She eats these meals when they provide them because she does not have any other food. But these meals do not allow her to maintain her independence and to control her diabetes and maintain her health.

164.    During the summer of 2022, Ms. Forest received a recertification form from the SNAP program. In or around August 2022, she completed the SNAP recertification form and submitted it in the envelope provided with the form, along with a copy of her lease as proof of her rental expense.

165.    Ms. Forest's home attendant mailed the form and the copy of the lease using a mailbox near her apartment. Ms. Forest regularly relies on her home attendant to mail things for her. Ms. Forest has never had a problem with her home attendant mailing things for her.

166.    On or around September 8, 2022, Ms. Forest received her September SNAP benefits in the amount of $281. She also received a $95 SNAP Emergency Allotment on or around September 23, 2022.

167.    After receiving her September SNAP benefits, Ms. Forest received a notice from SNAP Center 15, located at 243 Schermerhorn Street, dated September 27, 2022. The notice was entitled "Notice of Decision on your Supplemental Nutrition Assistance" and stated: "You will continue to get the SAME AMOUNT of NYSNIP SNAP benefits: $281.00." The notice said that Ms. Forest would "get $281.00 for the month of October, 2022."

168.    Ms. Forest thought her recertification was processed and expected her SNAP benefits in October 2022.

169.    However, Ms. Forest did not receive SNAP benefits in October 2022.

170.    She has not received any SNAP benefits since September 2022. She has not received any other notices from the SNAP program about her SNAP benefits.

171.    Ms. Forest called the SNAP program to try to get her SNAP benefits restored. She called the numbers listed on the September 27, 2022, SNAP notice as well many times but either was unable to get through, was cut off after being transferred, or, if she reached a human, was simply not helped. On many occasions, Ms. Forest called up to twenty times a day, from morning until 5:00 in the afternoon, hoping for help. One of the telephone numbers on the notice would just cut off. Ms. Forest called the second number on the notice, and, although on some occasions she managed to reach a representative before she got cut off, the representative would transfer her, and then she would be cut off. At no time did any HRA representative resolve the issue. Eventually, Ms. Forest could not get through on any of the numbers she tried.

172.    At that time, in or around October and November 2022, Ms. Forest had a working computer and used the internet to find more numbers to call to try to reach the SNAP program. Despite calling every number she could find, she did not have any success reaching anyone associated with the SNAP program who would help her.

173.    Ms. Forest currently does not have a working computer at home. She does not have a "smart" or "data" phone and is not able to use any online application or recertification systems at this time.

**Larysa Nazarenko**

174.    Plaintiff Larysa Nazarenko is 62 years old. She lives with her adult son in Brooklyn, New York.

175.    Ms. Nazarenko fled the war in Ukraine and was paroled into the United States on August 19, 2022.

176.    She is a Ukrainian citizen and speaks Ukrainian and Russian.

177.    She is presently unemployed. She currently receives $281 per month in SNAP and has been receiving an additional $95 in a SNAP Emergency Allotment. This is her only source of income.

178.    Ms. Nazarenko applied for SNAP benefits on August 31, 2022. HRA initially improperly denied her SNAP benefits due to immigration status and then reversed the denial on December 14, 2022.

179.    Ms. Nazarenko applied for Cash Assistance benefits on September 15, 2022, and never received a determination on that application.

180.    She applied for Cash Assistance again on December 4, 2022, and HRA has not made a determination on that application either.

181.    The lack of Cash Assistance has had a dramatic impact on Ms. Nazarenko. She is from Kiev and had to evacuate the Ukraine quickly. She had recently retired and was getting ready to apply for her pension before fleeing. She depleted her savings and has no money in her bank account and no way to meet her basic needs.

182.    On both September 15, 2022, and December 4, 2022, Ms. Nazarenko applied for Cash Assistance using ACCESS HRA—a program that allows users to apply and recertify for HRA-administered benefits—with the help of a friend. She submitted all supporting documents using the ACCESS HRA mobile app.

183.    She received confirmations on September 15, 2022, and December 4, 2022, that her applications had been successfully submitted.

184.    After she submitted her applications on September 15, 2022, and December 4, 2022, Ms. Nazarenko never received a phone call from HRA to complete her phone interview. She also did not receive any sort of notice from HRA informing her that she needed to submit any additional documents.

185.    Ms. Nazarenko has no information about the status of her September 15, 2022, application, and never received a determination from HRA. She has checked the status of her December 4, 2022, application with the assistance of her social worker repeatedly. However, her application is still pending and she is still without Cash Assistance benefits.

186.    Despite completing everything required for her application, Ms. Nazarenko has been deprived of benefits to which she is entitled. HRA has not issued a determination on her application and has not issued her benefits.

**Svitlana Antoshchenko**

187.    Plaintiff Svitlana Antoshchenko is 66 years old. She lives with roommates in Brooklyn, New York.

188.    Ms. Antoschchenko is a Ukrainian citizen, and speaks only Ukrainian and Russian.

189.    She came to the United States on a temporary visa on December 6, 2021, and was planning to return to Ukraine. However, she was in the United States when Ukraine was invaded, and could not return to her home in Kherson, Ukraine. She was granted Temporary Protected Status on October 6, 2022.

190.    Ms. Antoshchenko is unemployed and has no income.

191.    Ms. Antoshchenko applied for Cash Assistance benefits on October 24, 2022. HRA has not made a determination on her application.

192.    The lack of Cash Assistance has had a dramatic impact on Ms. Antoshchenko. She is unable to return to Ukraine at this time, and cannot access her pension there. She has depleted her savings, and has no money in her bank account and no way to meet her basic needs.

193.    Ms. Antoshchenko applied for Cash Assistance in person at the Coney Island Job Center on October 24, 2022. She received a confirmation on ACCESS HRA that her application had been successfully submitted.

194.    She submitted all supporting documents in person on the same day she applied, and received a document receipt from the Coney Island Job Center dated October 24, 2022.

195.    When Ms. Antoshchenko submitted her application on October 24, 2022, HRA conducted an interview in person. HRA informed her that the interview was her eligibility interview.

196.    Ms. Antoshchenko did not receive any sort of notice from HRA informing her that she needed to submit other documents.

197.    As of today, Ms. Antoshchenko's application is still pending, and she is still without Cash Assistance.

198.   Ms. Antoshchenko has been deprived of benefits to which she is entitled despite completing everything for her application. HRA has not issued a determination on her application and has not issued her benefits.

**Glennice Simon**

199.   Glennice Simon is 55 years old.

200.   She lives in Brooklyn, New York with her 22-year-old son, Chrisshawn.

201.   Ms. Simon receives Supplemental Security Income ("SSI") in the amount of $914 monthly. Until December 2022, Chrisshawn received Cash Assistance in the amounts of $91.50 biweekly in cash and $107.50 biweekly issued directly to her landlord for rent.

202.   Ms. Simon has numerous disabilities that impair her ability to travel and interact in crowded places.

203.   Through October 2022, Ms. Simon and Chrisshawn received SNAP benefits. On October 7, 2022 Ms. Simon and Chrisshawn received $406 and on October 22, 2022 they received $110 in SNAP benefits. In November 2022, their SNAP benefits stopped without notice.

204.   After they did not receive their SNAP benefits in November, Ms. Simon called the phone number on the back of her EBT card and was told her case was due for recertification. She had received no paperwork about this from HRA.

205.   In December 2022, Ms. Simon received a notice dated December 7, 2022 from Benefits Access Center 66 (Bushwick). The notice said that Chrisshawn's public assistance would be discontinued on December 18, 2022 because "[y]ou did not send us your completed recertification form and you did not complete the required recertification interview."

206.    The December 7, 2022 notice also said that if they submitted the recertification form within 10 days of the date of the notice, they would get a call for the interview, and the notice would be canceled if Chrisshawn was still eligible for public assistance. However, the notice did not include a recertification form to return.

207.    Ms. Simon called several numbers listed on the notice to try to obtain a recertification form, but she could not get through to anyone at HRA, which is generally the case when she tries to reach HRA on the phone.

208.    Ms. Simon had Access HRA on a previous phone but has been unable to download the app on her new phone. Access HRA is not a reliable way for her to manage her benefits because she has trouble using electronics.

209.    Chrisshawn last received a Cash Assistance issuance of $91.50 on December 8, 2022 to the household's EBT card. In addition, on December 23, 2022, $107.50 was issued to the landlord as a shelter allowance for rent. Since December, Chrisshawn received no additional Cash Assistance benefits.

210.    Ms. Simon lives in public housing run by the New York City Housing Authority ("NYCHA"). Her rent is 30% of her SSI income plus Chrisshawn's shelter allowance of $215 monthly paid directly to NYCHA by Cash Assistance. This shelter allowance is no longer being issued.

211.    As of today, Ms. Simon's household is still without Cash Assistance or SNAP benefits.

212.    Ms. Simon must now pay for all expenses out of her SSI. She has been able to survive only by spending money remaining from a retroactive disability award.

## STATEMENT OF CLAIMS

213.    Paragraphs 1 through 212 are incorporated by reference as if fully stated in the claims for relief set forth below.

## FIRST CLAIM FOR RELIEF

### SNAP Act and Implementing Regulations
### Failure to Timely Process Completed SNAP Applications and Recertifications

214.    Defendants, as a matter of policy, practice, and procedure, fail to timely process SNAP applications and applications for recertification and to provide benefits to all eligible households within the time frames specified, in violation of their obligations pursuant to 7 U.S.C. §§ 2020(e)(3), (4), (9); 7 U.S.C. § 2014(a), and its implementing regulations, 7 C.F.R. §§ 273.2(a)(2), (g)(1), (i)(2), (i)(3)(i), 7 C.F.R. § 273.14.

215.    Defendants are and have been on notice of these ongoing violations.

216.    As a result of Defendants' policies, practices, and procedures, Plaintiffs were and are deprived of their right to apply for, recertify for, and receive SNAP benefits to which they are entitled.

217.    Defendants' policies, practices, and procedures of failing to process SNAP applications and applications for recertification and to provide benefits were conducted under color of law.

218.    This violation of law is actionable on behalf of Plaintiffs under 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

### SNAP Act and Implementing Regulations
### Failure to Maintain System That Provides Access for Initial SNAP Applications and Recertifications

219.    Defendants, as a matter of policy, practice, and procedure, fail to provide reliable and accessible access to SNAP application and recertification processes, in violation of their

42

obligations pursuant to 7 U.S.C. § 2020(e)(3)-(4), (9); 7 U.S.C. § 2014(a), and implementing

regulations, 7 C.F.R. §§ 273.14, 273.2, including by:

> a)      failing to provide reliable and accessible methods for filing initial
>
> applications and recertifications;
>
> b)      failing to schedule required eligibility interviews and to provide reliable
>
> and accessible processes through which households may timely complete these
>
> required eligibility interviews; and
>
> c)      failing to provide a reliable, accessible process for the submission of
>
> required documents, including by failing to provide accessible methods for
>
> Plaintiffs to submit documents required in initial applications and recertifications
>
> for SNAP benefits so that they will be reliably reviewed and timely acted upon by
>
> Defendants, failing to provide assistance in securing required documentation, and
>
> failing to review documents in the agency's possession, resulting in erroneous
>
> deprivation of SNAP benefits.

220.    Defendants are and have been on notice of these ongoing violations.

221.    As a result of Defendants' policies, practices, and procedures, Plaintiffs were and

are deprived of their right to apply for, recertify for, and receive SNAP benefits to which they are

entitled.

222.    Defendants' policies, practices, and procedures of failing to provide reliable and

accessible alternative methods for filing initial applications and recertifications using the online

system for SNAP were conducted under color of law.

223.    This violation of law is actionable under 42 U.S.C. § 1983.

**THIRD CLAIM FOR RELIEF**

**Due Process Clause of the United States Constitution**
**Failure to Provide Adequate Due Process in the Administration of SNAP and Cash**
**Assistance Applications and Recertifications**

224.    Plaintiffs have a property interest in applying and recertifying for SNAP and Cash

Assistance benefits for which they are eligible.

225.    Defendants' failure to timely process Plaintiffs' SNAP and Cash Assistance

applications and recertifications results in *de facto* denials of benefits without notice or the

opportunity for a hearing in violation of the Due Process Clause of the Fourteenth Amendment to

the United States Constitution.

226.    Defendants' dysfunctional policies, practices, procedures, and systems deprive

Plaintiffs of access to SNAP and Cash Assistance benefits, fail to provide required notices, and

subject otherwise eligible individuals to arbitrary and/or erroneous denials of benefits in

violation of the Due Process Clause of the Fourteenth Amendment to the United States

Constitution.

227.    Defendants are and have been on notice of these ongoing violations.

228.    Defendants' policies, practices, and procedures of *de facto* denying Plaintiffs

access to SNAP and Cash Assistance were conducted under color of law.

**FOURTH CLAIM FOR RELIEF**

**New York State Social Services Law and Implementing Regulations**
**Failure to Timely Process Completed Applications and Recertifications**

229.    Defendants, as a matter of policy, practice, and procedure, fail to timely process

Cash Assistance applications and recertifications and to provide benefits to all eligible

households within the timeframes specified in the law and regulations, in violation of New York

Social Services Law § 131; 18 N.Y.C.R.R. §§ 350.3(b), 351.1(c)(1), 351.8, 351.20, 351.22, 351.26, 369.6(a).

230.    Defendants are and have been on notice of these ongoing violations.

231.    As a result of Defendants' policies, practices, and procedures, Plaintiffs were and are deprived of their right to apply for, recertify for, and receive Cash Assistance benefits to which they are entitled.

## FIFTH CLAIM FOR RELIEF

### New York State Social Services Law and Implementing Regulations
### Failure to Maintain System That Provides Access for Initial Cash Assistance Applications and Recertifications

232.    Defendants maintain policies, practices, and procedures of failing to provide reliable and accessible access to Cash Assistance application and recertification processes, in violation of their obligations pursuant to New York Social Services Law §§ 131, 134-a, 158(4), 349, and implementing regulations, 18 N.Y.C.R.R. §§ 350.3, 351.1(a), 351.1(c)(1), 351.1(b)(1)(i), 351.1(c)(1), 351.20, 351.22, 351.5(a), 351.8, 351.26, 369.6(a), 387.7(a), including by:

> a)    failing to provide reliable and accessible methods for filing initial applications and recertifications;
>
> b)    failing to schedule required eligibility interviews and to provide reliable and accessible processes through which households may timely complete these required eligibility interviews; and
>
> c)    failing to provide a reliable, accessible process for the submission of required documents, including by failing to provide accessible methods for Plaintiffs to submit documents required in initial applications and recertifications for Cash Assistance benefits so that they will be reliably reviewed and timely

acted upon by Defendants, failing to provide assistance in securing required

documentation, and failing to review documents in the agency's possession,

resulting in erroneous deprivation of Cash Assistance benefits.

233.   Defendants are and have been on notice of these ongoing violations.

234.   As a result of Defendants' policies, practices, and procedures, Plaintiffs were and

are deprived of their right to apply for, recertify for, and receive Cash Assistance benefits to

which they are entitled.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their

favor as follows:

1.   Certify that this action is a class action pursuant to Fed. R. Civ. P. 23(a) and

23(b)(2) on behalf of the Class of all New York City residents who, since March 19, 2020,

applied or recertified, attempted to apply or recertify, are applying or recertifying, or will apply

or recertify for SNAP and/or Cash Assistance benefits; and for whom HRA has not or will not

timely process such applications or recertifications, or who have been or will be unable to

complete their applications or recertifications due to HRA's systems, policies, practices, and

procedures.

2.   Declare that:

a.   Defendants' failure to process SNAP and Cash Assistance applications

and recertifications, including applications entitled to expedited

processing, and provide benefits to those eligible within the timeframes

required by law violate Plaintiffs' rights and Plaintiff Class members'

rights under the SNAP Act and implementing regulations (7 U.S.C.

§§ 2020(e)(3),(4),(9), 2014(a); 7 C.F.R. §§ 273.2(a)(2), (g)(1), (i)(2), (i)(3)(i), and 273.14), and the New York State Social Services Law and implementing regulations (N.Y. Soc. Serv. Law §§ 131; 18 N.Y.C.R.R. §§ 350.3(b), 351.1(c)(1), 351.8, 351.20, 351.22, 351.26); and

    b.    Defendants' failure to provide and maintain reliable, accessible processes by which New York City households can apply and recertify for SNAP and Cash Assistance benefits by submitting applications and recertification, completing mandatory interviews, and complying with verification requirements violate Plaintiffs' rights and Plaintiff Class members' rights under the SNAP Act and implementing regulations, and New York Social Services Law §§ 131, 134-(a), 158(4), and 349 and implementing regulations.

3.    Permanently enjoin and direct Defendants to comply with their obligations under the SNAP Act and New York Social Services Law, and implementing regulations, as well as the United States Constitution including without limitation by ordering Defendants:

    a.    To meet all timelines required by law regarding processing applications and recertifications for SNAP and Cash Assistance benefits, and to provide benefits to those eligible within the timeframes required by law;

    b.    To establish and maintain reliable and functional application and recertification application processes for SNAP and Cash Assistance benefits;

    c.    To establish and maintain reliable and accessible processes through which households may timely complete their required eligibility;

d.      To establish and maintain functional SNAP and Cash Assistance

verification procedures and processes and assist households in securing

required verification;

e.      To immediately process applications and/or recertifications for, and

provide all benefits to Named Plaintiffs Maria Forest, Larysa Nazarenko,

Svitlana Antoshchenko, and Glennice Simon;

f.      To identify, process applications and recertifications for, and provide

retroactive benefits to all other SNAP and Cash Assistance recipients who

failed to receive benefits as a result of Defendants' failures to comply with

their legal obligations; and

g.      To provide all notices to households as required by law.

4.   Award reasonable attorneys' fees, as provided by 42 U.S.C. § 1988;

5.   Award costs and disbursements; and

6.   Order such other and further relief as the Court may deem just and proper.

Dated: January 27, 2023
      New York, New York

                              Respectfully submitted,


                                 /s/  *Benjamin E. Rosenberg*
                              Benjamin E. Rosenberg
                              **DECHERT LLP**
                              Three Bryant Park
                              1095 Avenue of the Americas
                              New York, NY 10036
                              Tel: (212) 698-3500
                              Fax: (212) 698-3599
                              benjamin.rosenberg@dechert.com


                                 /s/  *Abby Biberman*
                              Abby Biberman
                              Kate Fetrow

Julia Russell
**NEW YORK LEGAL ASSISTANCE GROUP**
100 Pearl St., 19th Floor
New York, NY 10004
(212) 613-5000
abiberman@nylag.org
kfetrow@nylag.org
jrussell@nylag.org


   /s/  *Kathleen Kelleher*
Kathleen Kelleher
Judith Goldiner
Edward Josephson
Anne Callagy
Rachel Clapp
Evan Henley
Susan Welber
Camille Zentner
**THE LEGAL AID SOCIETY**
199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3307
kkelleher@legal-aid.org
jgoldiner@legal-aid.org
ejosephson@legal-aid.org
acallagy@legal-aid.org
rclapp@legal-aid.org
ewhenley@legal-aid.org
sewelber@legal-aid.org
czentner@legal-aid.org