# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARIA FOREST, LARYSA NAZARENKO,
SVITLANA ANTOSHCHENKO, and GLENNICE
SIMON, individually and on behalf of all persons
similarly situated,

                    Plaintiffs,

                    vs.                                    **Civ. 1:23-cv-00743-JHR**

CITY OF NEW YORK, MOLLY PARK in her
official capacity as Commissioner, New York City
Department of Social Services / Human Resources
Administration, and SCOTT FRENCH, in his official
capacity as Administrator, New York City Human
Resources Administration,

                    Defendants.[1]

---

**WHEREAS**, Plaintiffs commenced this action by filing a class action Complaint on

January 27, 2023, alleging, *inter alia*, that the New York City Human Resources Administration

("HRA") failed to: (1) process applications and recertifications for Supplemental Nutrition

Assistance Program ("SNAP") and Cash Assistance ("CA") benefits within the timeframes

required by federal and state law; and (2) maintain functional systems that enable SNAP and Cash

Assistance households to successfully apply and recertify for these benefits;

**WHEREAS**, on January 27, 2023, Plaintiffs moved for class certification and for a

preliminary injunction;

---

[1] Effective March 7, 2023, Gary Jenkins resigned as Commissioner of the New York City Department of Social
Services. Effective October 30, 2023, Lisa Fitzpatrick resigned as Administrator of the New York City Human
Resources Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Molly Wasow Park is
automatically substituted for Gary Jenkins and Scott French is automatically substituted for Lisa Fitzpatrick as
Defendants in this action.

**WHEREAS**, by Stipulation so-ordered by this Court on June 27, 2023, a class was certified consisting of "All New York City residents who, since March 19, 2020, applied or recertified, attempted to apply or recertify, are applying for recertifying, or will apply or recertify for SNAP and/or cash assistance benefits; and (a) for whom HRA has not or will not timely process such applications or recertifications once submitted; or (b) who have been or will be unable to complete their applications or recertifications due to HRA's systems, policies, practices, and/or procedures relating to application or recertification submission, processing, or interviews, as well as documentation or verification to establish eligibility, including benefit amount";

**WHEREAS**, in an Order dated July 18, 2023, the Court granted Plaintiffs' motion for a preliminary injunction and ordered Defendants to come into full compliance with all federal and state timely processing requirements for SNAP and CA applications and recertifications as outlined (ECF No. 59). The Order required Defendants to reduce the backlog of SNAP-only applications and recertifications pending for more than 30 days to no more than 800 cases by July 31, 2023, and contemplated that on or before July 28, 2023, the Parties would jointly file a "Benchmark Stipulation" explaining how Defendants would reduce the number of CA-only and CA-SNAP recertifications and applications pending for more than 30 days by March 31, 2024. The Order required Defendants to provide monthly reports to Plaintiffs so that they can assess compliance with Defendants' obligations under the Order;

**WHEREAS,** on August 7, 2023, after jointly requesting an extension of time, the Parties filed the "Benchmark Stipulation" specifying the dates by which Defendants would meet certain benchmarks reducing the number of CA-only and CA-SNAP recertifications and applications pending for more than 30 days, and this Court then issued a revised Order on August 7, 2023,

granting Plaintiffs' motion for a preliminary injunction (ECF No. 66), including the agreed-upon benchmarks;

**WHEREAS,** pursuant to waivers from the United States Department of Agriculture and the New York State Office of Temporary and Disability Assistance, HRA is currently using an On-Demand interview system for certain CA and SNAP applications and recertifications, instead of scheduling eligibility interviews as set forth in 7 C.F.R. § 273.2(e)(3) and 18 N.Y.C.R.R. § 350.3(c);

**WHEREAS**, pursuant to a waiver from the United States Department of Agriculture and the New York State Office of Temporary and Disability Assistance, HRA is currently using an Interactive Voice Response System (IVRS) for certain CA-SNAP and SNAP recertifications instead of requiring submission of a recertification form and an interview as set forth in 7 C.F.R. §§ 273.14(b)(3) and 273.2(e)(2);

**WHEREAS,** the Parties desire to resolve the remaining issues and claims alleged in Plaintiffs' Complaint without admitting any fault, or liability, and without further proceedings;

**WHEREAS,** HRA is undertaking a number of agency-wide reforms designed to improve access to benefits, increase participation in programs, and minimize delays, denials of eligible applications, and closures of eligible cases for all HRA clients;

**WHEREAS,** the Parties desire to settle this action on terms and conditions just and fair to all parties; and

**WHEREAS,** the Parties have conducted extensive arms-length negotiations to resolve the remaining issues in this action, and have resolved those issues as specified in this Stipulation and Order of Settlement ("Stipulation");

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE UNDERSIGNED** on behalf of the Named Plaintiffs and the class as defined above and the Defendants that, subject to Court approval, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, in consideration for the promises and covenants set forth in this Stipulation and upon entry by the Court of a Final Approval Order, the Action shall be settled and compromised upon the terms and conditions contained in this Stipulation:

## DEFINITIONS

**A.**      "Abandoned Call" means a call to the CA or SNAP On-Demand interview line that is placed into the interview queue, where the caller hangs up before they are connected to an interview agent and does not request a callback.

**B.**      "Abandonment Rate" means a metric where the numerator is the number of Abandoned Calls to the CA or SNAP On-Demand interview lines and the denominator is the number of inbound callers to the CA or SNAP On-Demand interview lines who are placed in the interview queue. This metric will be measured monthly.

**C.**      "ACCESS HRA" means an HRA system where Applicants or Recipients can apply or recertify for CA or SNAP in addition to other case actions.

**D.**      "ACCESS HRA Mobile Application" means a mobile application provided by HRA that enables Applicants and Recipients to apply or recertify for CA or SNAP, submit required documentation, and access case information from a mobile device.

**E.**      "Applicant" means a person who has filed the state prescribed form or its local equivalent that is used to begin the process of applying for CA or SNAP benefits.

**F.**      "Auto-Commit" means the method by which HRA will automatically Index documents using the document category selected by the Applicant or Recipient when they upload

documents through the ACCESS HRA Mobile Application and have documents go directly into the document repository under the category selected by the Applicant or Recipient.

**G.**        "Average Time to Abandonment" means the average length of time an inbound caller to the CA or SNAP On-Demand interview line who is placed in the interview queue waits for an interview agent prior to hanging up. This metric excludes calls that are transferred to an interview agent and calls where a callback is requested. This metric is measured monthly.

**H.**        "Average Wait Time" is the total time callers spend waiting in the CA or SNAP On-Demand interview queue for an interview agent to take the call divided by the number of inbound callers the system placed in the interview queue. The metric includes time spent waiting for an attempted callback even when the caller is not actively on the line. Abandoned Calls and the associated time are not included in this metric. This metric is measured monthly.

**I.**        "BAC" means Benefits Access Center or its successor Center.

**J.**        "Callback Option" means an automated option on the CA or SNAP On-Demand interview line where a caller who is placed in the queue can request a callback instead of waiting in the queue for an interview agent.

**K.**        "CA-only" means a case in which a household is applying for or receiving Cash Assistance benefits, but not SNAP benefits.

**L.**        "CA On-Demand Interview" means an eligibility interview as part of an application or recertification for CA benefits where the Applicant or Recipient initiates the call to HRA. As of the Effective Date of this Stipulation, HASA does not use the CA On-Demand Interview system.

**M.**        "Cash Assistance" or "CA" refers to New York State's two public benefits programs, Family Assistance ("FA") and Safety Net Assistance ("SNA"). References to CA

include CA-only cases, CA-SNAP cases, and CA cases administered at HASA Centers, unless otherwise specified.

N.        "CA-SNAP" means a case in which a household is applying for or receiving both CA benefits and SNAP benefits.

O.        "CA Application Timeliness Rate" - for the purposes of this settlement, this term shall mean the proportion of CA applications filed in a given month that are processed timely. For purposes of this rate, CA applications shall include all CA applications regardless of whether there is a SNAP component to the case, and regardless of whether the application was submitted through the HASA program, and regardless of whether the case was found eligible for ESNAP.

P.        "CA Outstanding Recertification Rate" - for the purposes of this settlement, this term shall mean the number of CA Outstanding Recertifications from a given monthly cohort at the end of that month divided by the total CA recertification cohort for that same month. For the purposes of this rate, CA recertification shall include all CA recertifications regardless of whether there is a SNAP component to the case, and regardless of whether the recertification was submitted through the HASA program.

Q.        "Class Member" means all New York City residents who, since March 19, 2020, applied or recertified, attempted to apply or recertify, are applying for or recertifying, or will apply or recertify for SNAP and/or cash assistance benefits; and (a) for whom HRA has not or will not timely process such applications or recertifications once submitted; or (b) who have been or will be unable to complete their applications or recertifications due to HRA's systems, policies, practices, and/or procedures relating to application or recertification submission, processing, or interviews, as well as documentation or verification to establish eligibility, including benefit amount.

**R.**　　　　"Deferral" means that HRA has extended the client's time to comply with all eligibility requirements related to an application or recertification.

**S.**　　　　"Dropped Call" means a call to the CA or SNAP On-Demand interview line where the call is terminated by the system without the caller hanging up.

**T.**　　　　"Effective Date" refers to the date on which all of the following have occurred:

　　　　1.　The Court has so-ordered the Stipulation and Order of Settlement, following notice to the Class and a fairness hearing as prescribed by Rules 23(c)(2) & 23(e) of the Federal Rules of Civil Procedure and compliance with the Class Action Fairness Act, 28 U.S.C. § 1715;

　　　　2.　The Court has entered an Order and Final Judgment in this action, and 30 days have passed after entry of the Order and Final Judgment. If there is an appeal (or if there are multiple appeals) of the Court's Order and Final Judgment, Defendants may move for a stay of the Effective Date.

**U.**　　　　"Effective Period" refers to the period that begins on the Effective Date and ends on the date that the Court's jurisdiction over this Stipulation and Order terminates.

**V.**　　　　"Expedited SNAP" or "ESNAP" means expedited service of SNAP as defined in 7 U.S.C. § 2020(e)(9), 7 C.F.R. § 273.2(i), and 18 N.Y.C.R.R. § 387.8(a)(2)(i).

**W.**　　　　"Filing Date" means the date the application is received by HRA. If the application is received outside normal business hours, HRA will consider the filing date to be the next business day. For online applications, the filing date is the date the application is submitted, or the next business day if it is submitted after business hours. For telephonic applications, the filing date is the date on which the household member provides verbal assent.

**X.**        "HASA" refers to the HIV/AIDS Services Administration, which is a program within HRA.

**Y.**        "HRA" or "the Agency" refers to the Human Resources Administration.

**Z.**        "HRA Center" means a physical location where Applicants and Recipients may go to interact with the Agency. The term HRA Center includes Benefits Access Centers, SNAP Centers, and HASA Centers, or their respective successor Centers.

**AA.**        "Index" means the method by which a document submitted by an Applicant or Recipient is linked to their electronic case file.

**BB.**        "Outstanding Recertification" refers to a recertification for CA or SNAP where the recertification was submitted and the interview requirement was met, or the recertification was otherwise completed, but it was not processed by the expiration date of the certification period. This includes cases in Deferral.

**CC.**        "Overdue Recertification" refers to a recertification for CA-SNAP or SNAP that was submitted and the interview held, or otherwise completed, prior to the fifteenth day of the last month of the certification period but was not processed by the expiration date of the certification period, or for CA-only recertifications that were filed before the last day of the certification period.

**DD.**        "Paperless Office System" or "POS" means an HRA system used to determine and recertify eligibility for CA benefits, or its HRA successor computer application.

**EE.**        "Recipient" means a person who is currently authorized to receive CA or SNAP benefits.

**FF.**        "SNAP" refers to the Supplemental Nutrition Assistance Program.

**GG.**        "SNAP Application Timeliness Rate" - for the purposes of this settlement, this term shall mean the proportion of SNAP applications filed in a given month that are processed within

30 days of the Filing Date. For the purposes of this rate, SNAP applications include all SNAP applications, regardless of whether they are submitted as part of a CA application, and regardless of whether the application was submitted through the HASA program. This rate does not include cases that are measured as part of ESNAP timeliness. This metric will be measured monthly.

**HH.**       "SNAP Outstanding Recertification Rate" for the purposes of this settlement, this term shall mean the number of SNAP Outstanding Recertifications from a given monthly cohort at the end of that month divided by the total SNAP recertification cohort of that same month. For the purposes of this rate, SNAP recertification shall include all SNAP recertifications regardless of whether there is a CA component to the case, and regardless of whether the recertification was submitted through the HASA program.

**II.**        "SNAP-only" means a case in which a household is applying for or receiving SNAP benefits, but not CA benefits.

**JJ.**        "SNAP On-Demand Interview" means an eligibility interview as part of an application or recertification for SNAP-only benefits whereby the Applicant or Recipient initiates the call to HRA.

**KK.**       "Timely Processed Application" means an application that is processed within the required timeframes set forth in federal and state law. An application will be considered processed timely where it has been 30 days or less since the date the application Filing Date, and either (1) HRA has decided to accept the case, and the first payment has been authorized, or (2) HRA has decided to deny the case.

**LL.**        "Wait Time" means the time a caller to the CA or SNAP On-Demand Interview line spends waiting in queue for an interview agent to take the call. The in-queue time includes

time spent waiting for an attempted callback even when the caller is not actively on the line. Abandoned Calls are not included in this metric. This metric will be measured monthly.

## I.    <u>TIMELINESS</u>

1.    **Processing Timeframes.** HRA will comply with all federal and state timely processing requirements for SNAP and CA applications and recertifications and for providing expedited processing of ESNAP benefits at application as set forth in the federal and state laws and regulations. *See* 7 U.S.C. § 2020(e)(3) and (e)(9) (SNAP); 7 C.F.R. § 273.2(g) (SNAP); 7 C.F.R. § 273.2(i)(3) (SNAP); 7 C.F.R. § 273.14 (SNAP); N.Y. Soc. Serv. Law § 158(4) (Safety Net Assistance); 18 N.Y.C.R.R. § 369.6(a) (Family Assistance); 18 N.Y.C.R.R. § 351.8 (b), (c)(3) (Safety Net Assistance and Family Assistance); and 18 N.Y.C.R.R. § 387.8(a)(2)(i) (SNAP). In citing the statutory and regulatory provisions herein, the Parties do not intend to create rights or obligations not grounded in the statutes and regulations themselves.

## II.    <u>INTERVIEWS</u>

2.    **Confirmation of the Interview and Notice of Documents to be Submitted.** At the end of the interview, HRA will provide to the Applicants or Recipients via ACCESS HRA or mail: (a) a notice that confirms they have completed the interview; and if applicable, (b) a notice that lists any eligibility documents that remain outstanding for the application or recertification, the date by which those documents must be submitted, and the methods by which they can be submitted. If a face-to-face interview is completed at an HRA Center, HRA will provide a same-day notice by hand that indicates that the interview was completed and, if applicable, a notice that lists any eligibility documents that remain outstanding for the application or recertification, the date by which those documents must be submitted, and the methods by which they can be submitted.

**Cash Assistance On-Demand Interviews for Applications and Recertifications**

3.      As of the Effective Date, HASA does not use the CA On-Demand Interview system. Therefore, the provisions in paragraphs 7–10, 18–21, and 45–47 below do not apply to HASA Applicants or Recipients.

4.      If HRA changes its policies and practices such that HASA clients start using the CA On-Demand Interview system, the Parties agree to meet and confer within 15 days of the change to discuss the change and, if necessary, to negotiate in good faith to determine whether to revise the affected portions of this Stipulation.

5.      If the waivers granted by the U.S.D.A. Food and Nutrition Service and the New York State Office of Temporary and Disability Assistance currently in use by HRA to provide On-Demand interviews for SNAP-only, CA, and CA-SNAP applications and recertifications are withdrawn, the Parties agree to meet and confer within 15 days of the withdrawal to determine the impact on the instant agreement and if necessary, to negotiate in good faith to determine whether to revise the affected portions of this Stipulation.

6.      Within 60 days of the Effective Date, HRA agrees to make a request to the New York State Office of Temporary and Disability Assistance so that notices generated by the Centralized Notice System closing certain cases for failure to recertify (Code G69 or G70) will direct CA Recipients to the CA On-Demand Interview line.

7.      **Callback in the Case of Disconnection.** If a call to the CA On-Demand interview line is disconnected during the application or recertification interview, the worker will make one attempt to call the Applicant or Recipient back to complete the interview.

8.      **Process for Callbacks.** HRA will offer a callback to Applicants or Recipients who call the CA On-Demand interview line to complete their application or recertification interview as

follows: (a) the Callback Option shall be available until 4:00 P.M. on every day the CA On-Demand interview line is open. Callers who call after 4:00 P.M. will not be offered a callback but will be advised of the wait time as outlined in paragraph 10 below; (b) The callback will be made on the same day the Applicant or Recipient requested the callback; (c) the callback message script offering a callback will be preceded by a message announcing the estimated wait time to speak with an agent; (d) the Callback Option shall be offered to Applicants or Recipients at regular intervals; and (e) within 60 days after the Effective Date the automated system will confirm both the number that will be called and the number from which callers can expect to receive a call. Within 90 days after the Effective Date, HRA will provide to Plaintiffs' counsel a demonstration of the process for callbacks.

9.      **Second Callback for CA On-Demand.** Within 90 days of the Effective Date, HRA will provide a second CA On-Demand callback to an Applicant or Recipient who does not answer and for whom HRA was unable to leave a voicemail. HRA will make best efforts to make the second callback on the same day the Applicant or Recipient requested the callback, however, in no instance will the second callback be made later than 12:00 PM the next business day. HRA will continue to provide two callbacks to callers who meet the criteria until one of the following conditions is met: (1) the Average Wait Time on the CA On-Demand interview line falls below one hour and 20 minutes for six consecutive months; or (2) the second callback results in leaving a voicemail or reaching the person in less than 50% of the second callback attempts for six consecutive months. Within 60 days of the Effective Date, HRA will develop or modify a written policy to describe the second callback process and will share a draft with Plaintiffs for comment consistent with paragraph 36 below.

10.    **Updates on Wait Times.** HRA will offer regular updates on the wait times for callers who choose to wait on the phone rather than request a callback. At regular intervals, callers will be notified of their wait time as follows: less than five minutes; between five and ten minutes; and for wait times longer than ten minutes, callers will be advised of the wait time in ten-minute increments up to the three-hour mark.

**In-Person Interviews at HRA Centers**

11.    **Notification of Right to In-Center Interviews.** Within 30 days of the Effective Date, HRA shall post signage at all HRA Centers and client-facing HRA offices in Housing Courts notifying Applicants and Recipients of the right to an interview—including the right to a face-to-face interview—at an HRA Center that corresponds to the type of benefits they are applying for or receiving, regardless of the method of application submission, and notifying Applicants and Recipients that the HRA Center may not turn away an Applicant or Recipient seeking an interview provided they are at the HRA Center that corresponds to the benefits they are applying for or receiving. HASA Applicants and Recipients must interview at their assigned HASA Center. Within 30 days of the Effective Date, HRA will also post this message on the application and recertification confirmation pages on ACCESS HRA, and any sections related to CA or SNAP interviews from the NYC.gov HRA website. Within 60 days of the Effective Date, HRA will train relevant staff and notify security personnel on the right to interview at an HRA Center, including the right to a face-to-face interview, and that the HRA Center may not turn away an Applicant or Recipient seeking an interview provided the Applicant or Recipient is at the HRA Center that corresponds to the benefits they are applying for or receiving. HASA Applicants and Recipients must interview at their assigned HASA Center. HRA will provide copies of these training materials to Plaintiffs for comment as outlined in paragraph 37 below.

12. **Confirmation of Posting of Notice.** Within 45 days of the Effective Date, HRA will provide written confirmation to Plaintiffs' counsel that the notice has been posted as set forth in paragraph 11.

**Interactive Voice Response ("IVR") Recertifications**

13. **No Change IVR Recertification for CA – Phase I.** Within 90 days of the Effective Date, HRA will streamline recertification interviews for CA households in which all members of the household are age 55 or older, or are disabled, and have no earned income and have no changes of circumstances other than shelter cost. This paragraph will not apply to households receiving CA through the HASA program, as the current waiver does not apply to HASA cases.

14. **No Change IVR Recertification for CA – Phase II.** Within 12 months from the Effective Date, HRA will implement a system by which CA households in which all members of the household are age 55 or older, or are disabled, and have no earned income and have no changes of circumstances other than shelter cost, will have the option to use voice or keypad inputs to complete their eligibility interviews. For the eligible population, no actual interview with a worker will be required. The post-interview processing will also be automated. This paragraph will not apply to households receiving CA through the HASA program, as the current waiver does not apply to HASA cases.

15. **Explore Feasibility of Waiver for No Change IVR Recertifications for HASA CA cases.** Within 12 months of the Effective Date, HRA will investigate the feasibility of obtaining a similar waiver for HASA recipients. HRA will report the findings of its investigation to Plaintiffs' counsel within 30 days of the end of the investigation period.

**Written Policies and Procedures for Interviews**

16.    **CA Interview-Related Policies.** Within 90 days of the Effective Date, HRA will update their formal written policies and notices to community partners to implement paragraphs 2, 7–10 above for Cash Assistance interviews for applications and recertifications. The policies shall also specify how relevant HRA staff will document that the application or recertification interview has been completed, including the process to be used if the electronic recording system fails during the interview and the worker is required to manually record the responses and generate the confirmation of interview notice and the request for additional documents notice. The policies shall also specify how Applicants will be screened for ESNAP processing and Immediate Needs Grants eligibility during the interview process.

17.    **SNAP Interview-Related Policies.** Within 90 days of the Effective Date, HRA will update its formal written policies to reflect the current SNAP On-Demand interview procedures for SNAP-only applications and recertifications. The policies shall reflect all methods for completing interviews, including but not limited to those interviews completed via the On-Demand system and those completed in person at SNAP Centers, and the process to provide a receipt for a completed interview. The policies shall also specify how relevant HRA staff will document that the application or recertification interview has been completed, including the process to be used if the electronic recording system fails during the interview and the worker is required to manually record the responses and generate the confirmation of interview notice and the request for additional documents notice. The policies shall also specify how Applicants will be screened for ESNAP processing and eligibility during the interview process.

**Metrics for On-Demand Interview Phone Lines**

18.    **Average Wait Time – CA On-Demand**. Beginning in the second full calendar month after the Effective Date, and continuing throughout the Effective Period, HRA will not exceed an Average Wait Time of 1 hour and 20 minutes for the CA On-Demand interview queues except for the months of July, August, September, and October, when the Average Wait Time will not exceed 1 hour and 30 minutes.

19.    **Average Wait Time – SNAP On-Demand**. Beginning in the second full calendar month after the Effective Date, and continuing throughout the Effective Period, HRA will not exceed an Average Wait Time of 1 hour and 10 minutes on the SNAP On-Demand interview queue except for the months of July, August, September, and October, when the Average Wait Time will not exceed 1 hour and 20 minutes.

20.    **Wait Time – CA On-Demand**. Beginning in the third full calendar month after the Effective Date, and continuing throughout the Effective Period, HRA will reduce the Wait Time on the CA On-Demand interview queue such that no more than 7% of callers will experience a Wait Time greater than 3 hours.

21.    **Wait Time – SNAP On-Demand**. Beginning the second full calendar month after the Effective Date, and continuing through the Effective Period, HRA will reduce the Wait Time on the SNAP On-Demand interview queue lines such that no more than 7% of callers will experience a Wait Time greater than 3 hours.

## III.    PROCESSING OF APPLICATIONS AND RECERTIFICATIONS

**Document Submission**

22.    **SNAP-only Auto-Committal of Documents.** HRA will utilize a system whereby documents submitted through the ACCESS HRA Mobile Application by SNAP-only Applicants

and Recipients will be Auto-Committed to the document repository using the categorization provided by the client.

23.    **SNAP-only Receipts.** Within 60 days of the Effective Date, for SNAP-only cases, HRA will provide a receipt to the Applicant or Recipient within five (5) days of a document being Indexed to a case. The receipt shall be issued within five (5) days regardless of the method of submission, except that HRA will provide a same-day receipt for documents submitted in person at a SNAP Center. The receipt shall include the date the documents were provided by the Applicant or Recipient, the date they were Indexed to the Applicant or Recipient's case record, and a description of the documents, including the titles or types of documents.

24.    **Submission of Documents for CA Applications and Recertifications.** Within 60 days of the Effective Date, HRA will develop a system to Index all documents submitted by CA Applicants or Recipients regardless of the method of submission, including but not limited to in person, via fax, via the ACCESS HRA Mobile Application, via the NYC HRA Document Upload application, or by mail, within five (5) days of submission by the Applicant or Recipient.

25.    **Receipt for CA Documents.** Within 60 days of the Effective Date, HRA will provide a document receipt to CA Applicants or Recipients within five (5) days of submission. The receipt shall include the date the documents were provided by the Applicant or Recipient, the date they were Indexed to the Applicant or Recipient's case record, and a description of the documents, including the titles or types of documents. The receipt shall be issued within five (5) days regardless of the method of submission, except that HRA will provide a same-day receipt for documents submitted in person at a BAC. The requirement does not apply to HASA as HASA is already required to issue document receipts. This paragraph shall not be the subject of any enforcement, contempt, or other motion with regard to HASA Applicants and Recipients.

**Process for Illegible Documents**

26.     By no later than April 1, 2026, or one month from the Effective Date, whichever is later, HRA will implement a new category for illegible documents in the existing receipt issued for documents submitted in support of an application or recertification (i.e. Form EXP-76R). The new document category will list the page count of the illegible document and will direct the Applicant or Recipient to resubmit the illegible document. This document category will be used for all document submission methods, except Auto-Commit, if implemented, or documents submitted by an Applicant or Recipient at a customer service desk. A document indexed as an illegible document will be listed as such on the "My Case Record" section of ACCESS HRA for 60 days from indexing.

27.     By no later than December 31, 2025, or one month from the Effective Date, whichever is later, HRA will begin using a new client notice at the time of application or recertification processing, which will be generated and issued to Applicants or Recipients whenever a scanned document is found to be illegible. The issuance of this notice will defer the determination of the case for a period of at least 10 days to allow the Applicant or Recipient to resubmit the document. At least 15 days before the new client notice goes into use, HRA agrees to provide Plaintiffs with a copy for review as outlined in paragraph 36.

**Document Use and Reuse**

28.     To prevent erroneous denials or closures when documents are in HRA's possession, HRA will utilize a pop-up message, whereby a staff person processing a CA or SNAP application or recertification will be prompted to check HRA systems for documents before denying or closing a case.

29.     HRA will review documents in its document repository to determine if it already has documentation that is not subject to change and that is needed to verify eligibility at application and recertification or any other time an eligibility factor must be verified. Within 12 months of the Effective Date, HRA will implement a feature that will force workers to view each document potentially identified as a document not subject to change and answer whether each document can be reused before issuing a notice notifying the Applicant or Recipient that a document is still needed. This notice will be sent by mail or posted on ACCESS HRA including the ACCESS HRA Mobile Application. HRA will revise its existing POS Document Reuse Protocol to include this newly implemented feature.

30.     Within one month from the Effective Date, HRA will implement an edit in POS that will bar workers from rejecting an application or recertification for failure to submit documentation if a document has been scanned into HRA's document repository but the document has not yet been Indexed.

31.     **PDF Submission**. Within 12 months of the Effective Date, HRA will submit to the New York City Office of Management and Budget (OMB) a Capital Plan request for funding to create functionality that enables users to upload documents to ACCESS HRA via a web browser.

32.     **One Shot Application Processing.** HRA agrees to draft a procedure that instructs staff to re-register a closed or rejected application for emergency assistance when a client requests it within 60 days of the original application date. HRA agrees to train BAC, HASA, RAU, and FCDU on the re-registration procedure.

33.     **Locating Cases on ACCESS HRA.** Within 30 days of the Effective Date, HRA will issue a written policy to allow Applicants who do not have a Social Security Number to receive

their Client Identification Number (CIN) during the interview, which will allow applicants to locate their cases on ACCESS HRA.

34.     Within 30 days of the Effective Date, HRA will post a notice on ACCESS HRA to inform Applicants and Recipients of the option to submit documents via the NYC HRA Document Upload application using an application confirmation number.

**Policies on Document Submission and Application and Recertification Processing**

35.     Within 60 days of the Effective Date, HRA will publish a written policy to memorialize the document submission processes described in paragraphs 22–32, and 34.

## IV.    REVIEW OF POLICIES AND PROCEDURES

36.     HRA will provide drafts of all policies, procedures, and notices created or modified as a result of this Stipulation, to Plaintiffs' counsel for their review and comment prior to publication. Plaintiffs' counsel will provide any comments within fourteen (14) days or as otherwise agreed to by the Parties. If Plaintiffs believe that HRA's failure to incorporate Plaintiffs' comments and recommendations is not minimal but is sufficiently significant as to constitute a systemic failure to comply with the provisions of this Stipulation, Plaintiffs may seek relief from the Court, after meeting and conferring, consistent with the provisions in paragraphs 60–62 on Enforcement of this Stipulation.

## V.    TRAINING

37.     Within 150 days of the Effective Date, HRA will update or create training materials, as necessary, for the specific policies set forth in paragraphs 2, 7–11, 16-17, 22–30, and 32-34 above. HRA will provide these training materials to Plaintiffs' counsel for their review and comment prior to publication. Plaintiffs' counsel will provide any comments within fourteen (14) days or as otherwise agreed to by the Parties. If Plaintiffs believe that HRA's failure to incorporate

Plaintiffs' comments and recommendations is not minimal but is sufficiently significant as to constitute a systemic failure to comply with the provisions of this Stipulation, Plaintiffs may seek relief from the Court, after meeting and conferring, consistent with the provisions in paragraphs 60–62 on Enforcement of this Stipulation.

## VI.    <u>MONITORING</u>

38.    **Monitoring and Processing Timeframes.** To monitor HRA's compliance with their obligations from paragraph 1 to timely process all applications and recertifications as required by state and federal law, HRA will produce a Monthly Timeliness Report to Plaintiffs as detailed below. The first report will be provided ninety (90) days after the Effective Date and will report on data from the first full month following the Effective Date. Further monthly reports will be produced sixty (60) days after the end of the reporting month, until the end of the Effective Period, and will consist of the following metrics:

(a)    For all CA applications: (1) the number of applications filed in the calendar month; (2) the number of applications filed in the calendar month that were processed timely; and (3) the CA Application Timeliness Rate as defined above for the calendar month.

(b)    For all CA recertifications: (1) the number of recertifications expiring at the end of the month; (2) the number of Outstanding Recertifications at the end of the month; and (3) the CA Outstanding Recertification Rate as defined above for the month.

(c)    For all SNAP applications: (1) the number of applications filed in the calendar month; (2) the number of applications filed in the calendar month that were processed timely; and (3) the SNAP Application Timeliness Rate as defined above for the calendar month.

(d)      For all SNAP recertifications: (1) the number of recertifications expiring at the end of the month; (2) the number of Outstanding Recertifications at the end of the month; and (3) the SNAP Outstanding Recertification Rate as defined above for the month.

(e)      For all CA-SNAP Applicants eligible for ESNAP: (1) the number of all CA-SNAP applications eligible for ESNAP benefits; (2) the number who received those benefits within 7 days after the date of application; and (3) the number who did not receive ESNAP.

(f)      For all SNAP-only Applicants eligible for ESNAP: (1) the number of all SNAP-only applications eligible for ESNAP benefits; (2) the number who received those benefits within 7 days after the date of application; and (3) the number who did not receive ESNAP.

(g)      For all HASA CA applications: (1) the number of applications filed in the calendar month; and (2) the number of applications pending more than 30 days by month of filing.

(h)      For all HASA CA recertifications: (1) the number of recertifications expiring at the end of the month; and (2) the number of Outstanding Recertifications by authorization expiration month.

39.      **Benchmarks.** To bring HRA into full compliance as described in paragraph 1, HRA will achieve the following benchmarks for timely processing for SNAP applications and recertifications and Cash Assistance applications and recertifications:

(a)      Three months after the Effective Date, the CA Application Timeliness Rate will be 80% or greater and the CA Outstanding Recertification Rate will be 20% or lower.

(b)     Three months after the Effective Date, the SNAP Application Timeliness Rate will be 85% or greater and the SNAP Outstanding Recertification Rate will be 15% or lower.

(c)     Five months after the Effective Date, the CA Application Timeliness Rate will be 85% or greater and the CA Outstanding Recertification Rate will be 15% or lower.

(d)     Five months after the Effective Date, the SNAP Application Timeliness Rate will be 90% or greater and the SNAP Outstanding Recertification Rate will be 10% or lower.

40.     Beginning seven months after the Effective Date, if the CA Application Timeliness Rate is less than 95% or the CA Outstanding Recertification Rate is greater than 10% for any three months out of a six-month period, the parties must meet and confer within 15 days of HRA's production of the third report. If the parties are unable to resolve the noncompliance through a corrective action plan, Plaintiffs may seek relief from the Court.

41.     Beginning seven months after the Effective Date, if the SNAP Application Timeliness Rate is less than 95% or the SNAP Outstanding Recertification Rate is greater than 10% for any three months out of a six-month period, the parties must meet and confer within 15 days of HRA's production of the third report. If the parties are unable to resolve the noncompliance through a corrective action plan, Plaintiffs may seek relief from the Court.

42.     HRA will produce the CA Outstanding Recertification Rate and the SNAP Outstanding Recertification Rate until the end of the Effective Period. However, should the U.S.D.A. Food and Nutrition Service (FNS) impose any recertification timeliness standard, HRA shall substitute that rate for the CA Outstanding Recertification Rate and the SNAP Outstanding

Recertification Rate. Prior to substitution of any new FNS-mandated timeliness standards, the Parties agree to meet and confer.

43.    Provided, further, that if HRA develops the technical means to exclude from the CA Outstanding Recertification Rate and the SNAP Outstanding Recertification Rate cases in which the recertification is submitted after the fifteenth day of the last month of the certification period, and/or cases where a deferral is in place at the end of the certification period, HRA shall exclude such cases from the CA Outstanding Recertification Rate and the SNAP Outstanding Recertification Rate, as provided in federal and state statute and regulation. Prior to the exclusion of any cases from the CA Outstanding Recertification Rate or the SNAP Outstanding Recertification Rate, the parties agree to meet and confer to determine a new CA and SNAP overdue recertification metric.

44.    **Monitoring Ongoing Eligibility Determinations for SNAP-only ESNAP cases.** Beginning 90 days after the end of calendar year quarter that includes the Effective Date and, on a quarterly basis thereafter, HRA will provide a SNAP-only ESNAP Report to monitor the ongoing eligibility determinations for SNAP-only ESNAP-eligible cases. The reporting period will follow a calendar year quarter. If the Effective Date occurs after a calendar year quarter has already begun, the first report will include the month of the Effective Date and any subsequent months in that calendar year quarter. These reports will be provided ninety (90) days following the end of the reporting period and will include: From the universe of SNAP-only cases that: 1) were filed during the review month; 2) were found eligible for ESNAP; and 3) did not have a pending Fair Hearing request on their application with the Fair Hearing code #2 (Aid to Continue), HRA will report a compliance rate comprised of the percentage of cases for which:

(a)    for applications filed in the first 15 days of the review month and not deferred for additional documentation, HRA made a determination on ongoing eligibility within 30 days of the application;

(b)    for applications filed in the first 15 days of the review month and deferred for additional documentation, HRA made a determination on ongoing eligibility by the end of the month after the application;

(c)    for applications filed in the 16th through 31st days of the review month and not deferred for additional documentation, HRA made a determination on ongoing eligibility by the end of the month after the application; and

(d)    for applications filed in the 16th through 31st days of the review month and deferred for additional documentation, HRA made a determination on ongoing eligibility by the end of the month following the month after the application.

45.    **Monitoring of On-Demand Interviews.** Beginning in the second full month after the Effective Date, HRA will provide Plaintiffs' counsel with a monthly report with data from the prior calendar month, showing:

(a)    the Average Wait Time for CA On-Demand callers;

(b)    the Average Wait Time for SNAP On-Demand callers;

(c)    the percentage of CA On-Demand callers who experienced a wait time greater than 3 hours;

(d)    the percentage of SNAP On-Demand callers who experienced a wait time greater than 3 hours;

(e)    the number of inbound callers to the CA On-Demand Interview line;

(f)    the number of inbound callers to the SNAP On-Demand Interview line;

(g)      the Abandonment Rate and the Average Time to Abandonment for both interview lines;

(h)      the number of Dropped Calls for both interview lines; and

(i)      the number of callers for both the SNAP and CA On-Demand interview lines placed into the queue who waited for each of the following time increments for an application or recertification interview before the agent took the call: (i) less than 1 hour; (ii) between 1 and 2 hours; (iii) between 2 and 3 hours; (iv) between 3 and 4 hours; and (v) more than 4 hours.

These reports will be produced thirty (30) days following the end of the reporting month.

46.      Beginning in the third full month after the Effective Date, and on a monthly basis thereafter, HRA will provide the number of monthly CA interviews completed face to face at BACs or initiated at the BAC phone bank, broken down by BAC.  These monthly reports will be produced ninety (90) days following the end of the reporting month.

47.      Beginning in the fourth full month after the Effective Date, HRA will provide Plaintiffs' counsel with a monthly report with data from the prior calendar month, showing the efficacy of the second callback as described in paragraph 9. These reports will be produced thirty (30) days following the end of the reporting month.

48.      HRA will provide Plaintiffs' counsel with quarterly reporting showing the number of applications that are denied and cases that are closed due to failure to verify eligibility by providing documentation, and the number of cases denied or closed for failure to keep an eligibility interview. This report will be provided within 45 days of the end of the quarter under review.

49.      Based on the quarterly data provided in paragraph 48, if the number of E10 case rejections (CA application rejected for failure to interview) is equal to or greater than 35% of the

total number of CA rejections for a given quarter, or if the number of H12 case rejections (SNAP application rejected for failure to interview) is equal to or greater than 35% of the total number of SNAP case rejections for a given quarter; or if the number of G69 case closures (CA case closed for failure to interview) is equal to or greater than 35% of the total number CA case closures for a given quarter; or if the number of Y13 case closures (SNAP case closed for failure to interview) is equal to or greater than 35% of the total number of SNAP case closures for a given quarter, HRA agrees to investigate and report back to Plaintiffs' counsel the reason for the increase and any steps HRA has taken to decrease the number of rejections and closures and prevent further increases. If the percentage of any of the four rejection or closing codes exceeds 35% two quarters in a row, HRA will provide Plaintiffs' counsel with a corrective action plan. If the percentage of any of the four rejection or closing codes exceeds 35% for three quarters, Plaintiffs may seek relief from the Court after meeting and conferring with Defendants.

50.    **Rejection Review Team.** In the third full month after the Effective Date, HRA will establish a Rejection Review Team, which will review a monthly random sample of 45 CA applications rejected for failure to return documentation and an additional 15 CA cases rejected for failure to keep an eligibility interview. The Rejection Review Team's first report will cover sample data from the third full calendar month after the Effective Date. These samples will not include HASA cases.

51.    HRA will provide Plaintiffs' counsel with a monthly report 60 days from the end of the report month, which provides the data elements set forth below.

(a)    Of the 45 applications rejected for failure to return documentation, HRA will provide the total number of cases incorrectly rejected for the failure to return documentation, and, of those cases:

       (i)     the number of cases that were incorrectly rejected because HRA already had the documents in its possession;

       (ii)    The number of cases that were incorrectly rejected because the documents requested (as reflected on the W-113K) were not needed to make an initial eligibility determination;

       (iii)   The number of cases that were incorrectly rejected because no W-113K was found;

       (iv)   The number of cases that were incorrectly rejected because the client submitted the documents after the due date stated on the W-113K but before the case was rejected.

    (b)    Of the 15 cases rejected for the failure to keep an eligibility interview, the total number of cases incorrectly rejected for the failure to keep an interview, because HRA has a record that the interview was completed;

52.    Where this review finds that an agency error was made, HRA will take appropriate corrective action and report the number of cases in which HRA issued a lost benefit.

53.    HRA will provide the rejection review data to Plaintiffs on a monthly basis until such time as the report shows that for four consecutive months, 90% of the 60 sample cases were correctly rejected; after four consecutive months in which the report shows that 90% of the 60 sample cases were correctly rejected, HRA may shift to provide the report three times per year, and will report on the calendar months of February, June and October.

54.    **Monitoring of the POS Edit.** Beginning in the fourth full month after the Effective Date, and during the Effective Period, HRA will provide Plaintiffs monthly with the number of times in the reporting month that the POS edit, set forth in paragraph 30, bars a worker from

rejecting an application or recertification for failure to submit documentation if the document has been scanned into HRA's document repository but the document has not yet been Indexed. These reports will be produced 30 days following the end of the reporting month.

**VII.    JURISDICTION**

55.    The provisions of this Stipulation shall not take effect until the Effective Date. Defendants' obligations under this Stipulation shall be in effect during the Effective Period.

56.    The Effective Period of this Stipulation shall end at the conclusion of four (4) years following the Effective Date, unless Plaintiffs move for and are granted an extension pursuant to paragraphs 63 through 65 of this Stipulation. When the Court's jurisdiction ends, all rights and claims arising under the provisions of this Stipulation shall terminate, the provisions of this Stipulation shall be deemed satisfied, and no further relief in this action shall be sought or granted.

57.    Every Class Member shall be deemed to have knowingly and voluntarily waived, released, discharged and dismissed all systemic claims or causes of action that were or could have been raised by the Class Representatives and/or the Class or any Class Member based on the factual allegations in the Complaint (ECF No. 1) against the City of New York, Molly Park in her official capacity as Commissioner, New York City Department of Social Services / Human Resources Administration, and Scott French, in his official capacity as Administrator, New York City Human Resources Administration regarding application and recertification timeliness, On-Demand Interview systems, and document processing through the date of this Stipulation ("Released Claims"). Released Claims do not include claims seeking individualized non-systemic relief brought by individual Class Members or their representatives under any federal, state, or New York City laws or regulations.

58.    In consideration for the agreements between the Parties and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns shall hereby release, remise and forever discharge the City, its predecessors, successors and assigns, together with all past and present officials, employees, representatives, and agents of the City of New York, or any agency thereof, and any person or entity represented by the Office of the New York City Corporation Counsel, and, in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privities, and insurers, from each and every Released Claim, as defined in the preceding paragraph, and shall forever be barred and enjoined from initiating, continuing, filing or otherwise prosecuting any Released Claim against any Defendant. This release shall apply whether or not such Class Member has actively participated in the Settlement. A proposed stipulation dismissing the Released Claims with prejudice will be filed along with the motion for Preliminary Approval.

59.    No provision in this Settlement shall infringe upon any individual Class Member's right to request a Fair Hearing concerning the individual's CA or SNAP benefits or to seek administrative or judicial review of the Fair Hearing decision.

## VIII.  ENFORCEMENT

60.    In the event of a motion by Plaintiffs for enforcement or contempt based upon Defendants' alleged non-compliance with this Stipulation, Defendants shall be considered to be in compliance with the provisions of this Stipulation unless Plaintiffs establish that Defendants' failures or omissions to comply with the provisions of this Stipulation were not minimal or isolated but were sufficiently significant, frequent, and recurring as to be systemic. Non-systemic,

individual, and isolated violations of this Stipulation shall not form a basis for a finding that Defendants have acted in contempt of this Stipulation or a basis for a motion for enforcement.

61.     During the Effective Period, if Plaintiffs' counsel believes that Defendants have failed to comply, as defined in paragraph 60 above, with the provisions of this Stipulation, Plaintiffs' counsel shall notify Defendants' counsel in writing of the nature and specifics of the alleged failure to comply and shall specify the basis for such belief, including but not limited to, any monitoring reports upon which such a belief is based. Such written notice shall be provided at least thirty (30) days before any motion is made for enforcement of this Stipulation or for contempt. Unless otherwise agreed, the Parties' counsel shall meet within this thirty-day period following notice to Defendants' counsel in an attempt to resolve the alleged failure to comply.

62.     If no resolution is reached within thirty (30) days from the date notice was provided to the Defendants, and if the Parties have met pursuant to paragraph 61 above in an attempt to resolve the alleged failure to comply, Plaintiffs may move this Court for an order enforcing the provisions of this Stipulation and/or for contempt of this Stipulation. No motion for enforcement or contempt shall be brought to remedy those violations that the Parties agree (a) have been cured or (b) will be cured pursuant to a plan agreed upon by the Parties. In the event that the Parties agree to a plan to cure an alleged violation and Plaintiffs believe that the violation has still not been cured after the planned actions, Plaintiffs must provide at least ten (10) days' notice before any motion is made for enforcement of this Stipulation or for contempt.

## IX.    <u>EXTENSION OF THE TERM OF THE STIPULATION</u>

63.     Plaintiffs may move this Court for an order extending the Effective Period of this Stipulation and shall make any such motion no later than thirty (30) days before the scheduled termination of this Court's jurisdiction, unless another date is agreed upon by the Parties. Plaintiffs

shall specify in their motion which provisions of the Stipulation they seek to extend, and explain the justification for the extension of each provision and the length of the proposed extension. The Court's jurisdiction shall only be extended over the/those provision(s) of this Stipulation for which the Court finds extension is warranted. The standard for measuring Defendants' compliance with the provisions of this Stipulation for the purposes of a motion to extend this Court's jurisdiction is that set out in paragraph 60 above. Any such extension(s) of the jurisdiction of this Court shall be for a period of not more than one (1) year from the date that the Court's jurisdiction was otherwise scheduled to terminate, unless another date is agreed to by the Parties. However, the total duration of the Effective Period including any and all extensions shall not exceed seven (7) years after the Effective Date.

64.    There is no limit to the number of times Plaintiffs may move for an extension of the Effective Period in accordance with paragraph 63 of this Stipulation, but only after giving Defendants prior notice and an opportunity to address any noncompliance consistent with paragraph 61. Such an extension must also be in accordance with paragraph 62.

65.    Prior to the expiration of any period of extended jurisdiction (extended pursuant to paragraphs 63–64 of this Stipulation), Plaintiffs may move for contempt or enforcement consistent with the provisions set forth in the "Enforcement" section above (paragraphs 60–62 of this Stipulation).

## X.    <u>GENERAL TERMS</u>

66.    **Attorneys' Fees.** The Parties agree to attempt to negotiate in good faith the amount of reasonable attorneys' fees and costs owed to Plaintiffs. If the Parties are unable to reach an agreement on the amount that Defendants will pay for attorneys' fees and costs, Plaintiffs' Counsel may make an application to the Court pursuant to Rule 54 of the Federal Rules of Civil Procedure.

Defendants do not contest Plaintiffs' entitlement to fees and costs through the final court approval of this Stipulation, but retain all rights to challenge the reasonableness of such fees and costs.

67.    **Individual Relief.** Without diminishing the right of Plaintiffs to seek enforcement of this Stipulation, HRA will provide Plaintiffs' counsel with a mechanism to notify the Agency in writing of complaints regarding the individual cases in which HRA allegedly violated the terms of this Stipulation. HRA will investigate the alleged incident(s), take any appropriate steps required to address the issue(s) concerning each individual case (including but not limited to issuing benefits to eligible Applicants and Recipients) and report the results of such investigation, including what steps, if any were taken to address the issue(s), in writing to Plaintiffs' counsel. Such report shall be provided within seven (7) business days of receiving Plaintiffs' counsel's report of the alleged incident(s) or in time to meet a deadline or avert and/or abate an emergency.

68.    Nothing contained in this Stipulation shall be deemed a finding or an admission that Defendants have in any manner violated Plaintiffs' rights as contained in the constitutions, statutes, regulations, or rules of the United States, the State of New York, or the City of New York.

69.    This Stipulation is not admissible in, nor is it related to, any other proceeding.

70.    Unless otherwise specified in this Stipulation, in the event of any change in federal statute or regulation or state statute or regulation, revocation or denial of a waiver of federal or state requirement by the appropriate federal or state agency, or significant change in funding, policy or operational requirements from the federal or state government, that any party believes changes his or her responsibilities or ability to comply with this Stipulation, such party shall notify all other parties and the Parties shall attempt to come to an agreement as to any modifications of this Stipulation that are warranted by said changes. If, after thirty (30) days, the Parties have not been able to agree, the party seeking to modify the Stipulation shall move the Court by motion

pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Thirty (30) days after filing such motion, Defendants shall be permitted to implement the modification pending the Court's decision on the motion unless the Court has ordered a stay of such implementation pending its decision or the Court permits Defendants to implement earlier. The filing by Plaintiffs of an appeal of an adverse decision shall not operate as a stay of Defendants' rights to implement the proposed modification without further order of the District Court or the Court of Appeals.

71.     The Revised Order Granting Motion for Preliminary Injunction entered on August 7, 2023 (ECF No. 66) will be deemed vacated upon the Effective Date. For the avoidance of doubt, the Order Granting Motion for Preliminary Injunction entered on July 18, 2023 (ECF No. 59) is vacated.

72.     This Stipulation constitutes the entire agreement among the Parties pertaining to the Complaint and fully supersedes any and all prior or contemporaneous understandings, representations, warranties, and agreements among the parties pertaining to the Complaint. No representations, oral or written, are being relied on by any party in executing this Stipulation other than the express representations of this Stipulation.


Dated: November  13, 2025
New York, New York

Abby Biberman
Julia Russell
Kate Fetrow
NEW YORK LEGAL ASSISTANCE
GROUP
100 Pearl Street, 19th Floor
New York, NY 10004
Tel: (212) 613-5000
abiberman@nylag.org
jrussell@nylag.org


By:  _/s/ Abby Biberman_
     Abby Biberman


Emily Lundgren
Katie Kelleher
Rachel Clapp
Evan Henley
Susan Welber
Laboni Rahman
Edward Josephson
Anne Callagy
Judith Goldiner
THE LEGAL AID SOCIETY
49 Thomas Street, 5th Floor
New York, NY 10013
(212) 298-5232
elundgren@legal-aid.org
kkelleher@legal-aid.org
rclapp@legal-aid.org
ewhenley@legal-aid.org
sewelber@legal-aid.org
lrahman@legal-aid.org
ejosephson@legal-aid.org
acallagy@legal-aid.org
Jgoldiner@legal-aid.org


By:  _/s/ Emily Lundgren_
     Emily Lundgren

MURIEL GOODE-TRUFANT
Corporation Counsel for the City of New
York
100 Church Street
New York, NY 10007
212-256-2392
alfmille@law.nyc.gov
sadhinsa@law.nyc.gov


By:  _/s/ Alfred Miller, Jr._
     Alfred Miller, Jr.
     Saarah Dhinsa
     Assistant Corporation Counsels


**_Attorneys for Defendants_**

Benjamin E. Rosenberg
Arielle Dragon
Andrew Stahl
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 613-5000
Benjamin.rosenberg@dechert.com
Arielle.dragon@dechert.com
Andrew.stahl@dechert.com


By:  */s/ Benjamin E. Rosenberg*
       Benjamin E. Rosenberg


***Attorneys for Plaintiffs***


**SO ORDERED.**


  **Date:**                                        _____
                                                    **JENNIFER H REARDEN**
                                                    **United States District Judge**