**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARIA FOREST, *et al*.,

                                   Plaintiffs,

                vs.

CITY OF NEW YORK, *et al*.,

                                   Defendants.

Civil Action No. 1:23-cv-00743


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**
**DIRECTING NOTICE OF SETTLEMENT TO CLASS;**
**AND SCHEDULING FAIRNESS HEARING**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 3

PRINCIPAL TERMS OF THE PROPOSED SETTLEMENT ...................................... 5

   I.   Recitals..................................................................................................................... 5

   II.   Timeliness, Interviews, and Processing ................................................................... 5

       A.   Processing Timeframes (Ex. 1, ¶ 1)............................................................. 5

       B.   Interviews (Ex. 1, ¶¶ 2–21) ......................................................................... 5

       C.   Application and Recertification Processing (Ex. 1, ¶¶ 22–35).................... 6

   III.   Policies, Training, and Monitoring ......................................................................... 7

       A.   Review of Policies and Training (Ex. 1, ¶¶ 36–37)..................................... 7

       B.   Monitoring (Ex. 1, ¶¶ 38–54) ...................................................................... 7

   IV.   Jurisdiction, Enforcement, and Fees ....................................................................... 8

       A.   Term and Release of Claims (Ex. 1, ¶¶ 56–57, 63–65) ............................... 8

       B.   Enforcement (Ex. 1, ¶¶ 60–62) ................................................................... 8

       C.   Attorneys' Fees (Ex. 1, ¶ 66) ....................................................................... 8

ARGUMENT .................................................................................................................. 9

   I.   The Court Should Preliminarily Approve the Parties' Settlement ........................... 9

       A.   The Settlement Is Fair, Reasonable, And Adequate................................... 10

   II.   The Proposed Notice of Class Action Settlement Will Provide Reasonable Notice to Absent Class Members ...................................................................................... 17

   III.   Fairness Hearing ................................................................................................... 19

CONCLUSION.............................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Berkley v. United States*,
    59 Fed. Cl. 675 (Fed. Cl. 2004) ............................................14

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)....................................13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................. *passim*

*Clark v. Ecolab, Inc.*,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)......................2, 9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..............................................9, 11

*D'Angelo v. Hunter Bus. Sch., Inc.*,
    2023 WL 11845607 (E.D.N.Y. Jan. 24, 2023) .....................16

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)........................................15

*Furlong v. United States*,
    132 Fed. Cl. 630 (Fed. Cl. 2017) ........................................14

*Glover v. City of Laguna Beach*,
    No. 15-cv-01332, 2018 WL 6131601 (C.D. Cal. July 18, 2018)............................................18

*Graff v. United Collection Bureau, Inc.*,
    132 F. Supp. 3d 470 (E.D.N.Y. 2016) ...................................9

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)......................12, 13, 14

*Hadel v. Gaucho, LLC*,
    2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ........................9

*Hyland v. Navient Corp.*,
    48 F.4th 110 (2d Cir. 2022) ................................................10

*Kaplan v. Chertoff*,
    2008 WL 200108 (E.D. Pa. Jan. 24, 2008) ..........................18

*Liberty Res., Inc. v. City of Philadelphia*,
  2023 WL 3204018 (E.D. Pa. May 1, 2023) ....................................................15

*M.F. by & through Ferrer v. N.Y.C. Dep't of Educ.*,
  671 F. Supp. 3d 221 (E.D.N.Y. 2023) ...............................................11, 12

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020) ...........................................................10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  2024 WL 3236614 (E.D.N.Y. June 28, 2024) ...............................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................19

*Romero v. Securus Techs., Inc.*,
  2020 WL 6799401 (S.D. Cal. Nov. 19, 2020) ..............................................16

*D.S. ex rel. S.S. v. N.Y.C. Dep't of Educ.*,
  255 F.R.D. 59 (E.D.N.Y. 2008) ...............................................................13, 14

*Sourovelis v. City of Philadelphia*,
  515 F. Supp. 3d 343 (E.D. Pa. 2021) ...........................................................17

*Sykes v. Mel Harris & Assocs., LLC*,
  2016 WL 3030156 (S.D.N.Y. May 24, 2016) ...............................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).......................................................................9, 17

*Weinberger* v. *Kendrick*,
  698 F.2d 61 (2d Cir. 1982)............................................................................19

**Statutes**

42 U.S.C. § 1983 .............................................................................................1

Food and Nutrition Act of 2008, Pub. L. No.110-246, 122 Stat. 1853 (2008) ...............................1

New York Social Services Law § 131 ............................................................1

New York Social Services Law § 134-A .........................................................1

New York Social Services Law § 158 ............................................................1

New York Social Services Law § 349 ............................................................1

**Other Authorities**

Fed. R. Civ. P.  23 .................................................................................................................. *passim*

Plaintiffs Maria Forest, Larysa Nazarenko, Svitlana Antoshchenko, and Glennice Simon, individually and on behalf of those similarly situated, submit this Memorandum of Law in support of their Motion for Preliminary Approval of Class Action Settlement; Directing Notice of the Settlement to Class; and Scheduling Fairness Hearing.

## INTRODUCTION

After nearly three years of zealous litigation and extensive arm's-length negotiations, Plaintiffs, on behalf of themselves and members of the certified Class, have entered a Stipulation of Settlement (the "Settlement") with Defendants the City of New York, the Commissioner of the New York City Department of Social Services ("DSS"), and the Administrator of the New York City Human Resources Administration ("HRA"), that resolves all of the Class's claims in exchange for relief that Plaintiffs believe will bring Defendants into compliance with federal law governing the distribution of benefits under the Supplemental Nutrition Assistance Program ("SNAP" ) and New York law governing the distribution of cash assistance ("CA").[1]  The Settlement, attached hereto as Exhibit 1 to the Lundgren Declaration and described in detail below, will bring valuable relief to the Class while respecting the discretion of Defendants to run their agency as they see fit, and contemplates an appropriately limited role for judicial oversight.

Plaintiffs bring this motion under Federal Rule of Civil Procedure 23 and respectfully request that the Court enter the proposed Preliminary Approval Order attached as Exhibit 3 to the Declaration of Emily Lundgren ("Lundgren Decl.").  That Order would provisionally find that the relief provided for in the Settlement is fair, reasonable, and adequate; direct distribution of the Class Settlement Notice, attached as Exhibit 2 to the Lundgren Declaration; and schedule a

---

[1] Plaintiffs asserted their SNAP-related claims under the Food and Nutrition Act of 2008 ("SNAP ACT"), Pub. L. No.110-246, 122 Stat. 1853 (2008), and implementing regulations; as well as due process claims under 42 U.S.C. § 1983.  Plaintiffs asserted their CA-related claims under New York Social Services Law §§ 131, 134-A, 158(4), 349, and implementing regulations.

1

Fairness Hearing, after which the Court can consider final approval of the Settlement. Defendants consent to the preliminary approval of the Settlement (although the views expressed herein are solely those of Plaintiffs).

As the Court is aware, this action challenges systemic delays and deficiencies in Defendants' administration of subsistence-level benefits to low-income New Yorkers under the Supplemental Nutritional Assistance Program and Cash Assistance programs. For many years leading up to this action, individuals and households applying and recertifying for SNAP and CA benefits in New York struggled to navigate the application and recertification processes and experienced systemically delayed decisions on their applications and recertifications for benefits, long beyond the federal-and-state-law-mandated timelines for such decisions. Through the Settlement, Defendants—after consultation with Plaintiffs, officials at the Defendant agencies, and other stakeholders—have agreed to take concrete actions to reduce those delays, in conjunction with meaningful changes in the processing of applications and recertifications.

The Settlement is "fair, reasonable, and adequate," satisfying all requirements of Rule 23(e)(2). Specifically, the Named Plaintiffs and Class Counsel have adequately represented the class, Fed. R. Civ. P. 23(e)(2)(A); the Settlement was negotiated at arm's length, *id*. 23(e)(2)(B); the relief provided for the class is adequate, *id*. 23(e)(2)(C); and the proposal treats all Class Members equitably, *id*. 23(e)(2)(D). Resolution of such matters as the instant litigation via settlement is to be preferred. *See Clark v. Ecolab, Inc*., 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (courts should give "proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation" (internal quotation marks and citations omitted)).

For the reasons set forth below, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement, direct provision of notice to the Class, and set a Fairness Hearing for the final approval of the Settlement.

## BACKGROUND

Plaintiffs are low-income New Yorkers who live below or near the poverty line and rely on SNAP and CA benefits administered by HRA to feed themselves and their families and meet their basic needs. Defendants—the City of New York, the Commissioner of DSS, and the Administrator of HRA—are responsible for ensuring these essential programs comply with the law. Plaintiffs allege that their applications or recertifications for SNAP benefits and/or CA benefits were not processed within legally mandated timeframes, and that HRA's existing systems made it excessively difficult for them to complete their applications or recertifications. *See* Class Action Complaint, ECF No. 1, ¶ 1 (hereinafter "Compl.").

On January 27, 2023, Plaintiffs filed this class action challenging Defendants' alleged failures to (1) timely process SNAP and CA applications and recertifications and provide benefits to all eligible households, and (2) provide reliable access to functional SNAP and CA application and recertification processes, thereby unlawfully depriving members of the plaintiff class of benefits to which they are entitled in violation of New York State and Federal laws and the Due Process Clause of the United States Constitution. *See* Compl. ¶¶ 213–34.

Plaintiffs filed their Motion to Certify Class, ECF No. 8, and Motion for Preliminary Injunction, ECF No. 6, the same day. The parties then spent the next several months attempting to explore a potential negotiated resolution of the dispute. *See* Status Report, ECF Nos. 32, 33 (requesting to hold Motions for Preliminary Injunction and to Certify Class in abeyance while the parties discussed potential resolution). During that period, the parties stipulated to the certification of a Class defined as:

> All New York City residents who, since March 19, 2020, applied or
> recertified, attempted to apply or recertify, are applying or
> recertifying, or will apply or recertify for SNAP and/or cash
> assistance benefits; and (a) for whom HRA has not or will not timely
> process such applications or recertifications once submitted; or (b)
> who have been or will be unable to complete their applications or
> recertifications due to HRA's systems, policies, practices, and/or
> procedures relating to application or recertification submission,
> processing, or interviews, as well as documentation or verification
> to establish eligibility, including benefit amount;

Proposed Stipulation on Class Certification, ECF No. 38 at 2.  The Court so-ordered the parties' class certification stipulation and certified the Class on June 27, 2023.  *See* ECF No. 51.

Subsequent to the Court's certification of the Class, and after the parties' negotiations aimed at resolving the litigation without need for a preliminary injunction were unsuccessful, the parties completed briefing on the pending Motion for Preliminary Injunction.  *See, e.g.*, Decl. of Jonathan Pines, ECF No. 42 (Defendants' declaration in response to Plaintiffs' Motion for Preliminary Injunction); Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 46.  Defendants' responsive filing did not oppose Plaintiffs' motion for preliminary relief.  *See generally* Decl. of Jonathan Pines, ECF No. 42; Decl. of Jill Berry, ECF No. 43.

The Court granted Plaintiffs' Motion for Preliminary Injunction on July 18, 2023.  *See* ECF No. 59.  In so doing, the Court found, *inter alia*, that Defendants are obligated by federal and state law to meet specific processing timelines when administering SNAP and CA benefits.  *Id*. at 2. The Preliminary Injunction required Defendants to meet a series of phased compliance benchmarks intended to bring Defendants' administration of the SNAP and CA systems into substantial compliance with federal and state law.  *Id*. at 4–5.  The parties negotiated and agreed to those phased compliance benchmarks in the months following the Court's approval of the Preliminary Injunction.  *See* ECF Nos. 64–66.

4

The parties then proceeded to conduct more than two years of discovery, while simultaneously engaging in extensive settlement negotiations. *See* Lundgren Decl. ¶¶ 13–17. The parties have reached agreement on the terms of a settlement that would resolve this class action and executed a Settlement Agreement on November 13, 2025. *See* Lundgren Decl. ¶ 17; Ex. 1.

## PRINCIPAL TERMS OF THE PROPOSED SETTLEMENT

The Stipulation of Settlement contains the full terms of the proposed Settlement. The material terms are summarized below.

### I.    Recitals

The Settlement recounts the history of the litigation, from the filing of the class action complaint on January 27, 2023 to the certification of the class on June 27, 2023.

### II.    Timeliness, Interviews, and Processing

The Settlement secures significant commitments from HRA to improve the systems by which New York City residents apply for and maintain essential benefits.

#### A.    Processing Timeframes (Ex. 1, ¶ 1)

The Settlement affirms HRA's obligation to comply with all federal and state timely processing requirements for SNAP and CA applications and recertifications, as set forth in controlling laws and regulations.

#### B.    Interviews (Ex. 1, ¶¶ 2–21)

The Settlement institutes numerous improvements to the eligibility interview process. The Settlement requires HRA to provide applicants with a notice confirming interview completion and, where applicable, a list of any outstanding documents required to determine eligibility. *See* Ex. 1, ¶ 2. For the On-Demand phone interview lines, the Agreement obligates HRA to reduce wait times for callers to the On-Demand interview lines, such that average wait times and the percentage of callers experiencing excessive wait times remain below agreed-upon benchmarks. *See id.*, ¶¶ 18–

21.  Under the Settlement, HRA will also implement a more robust callback system, including a second callback attempt for those who miss an initial callback, and will provide callers with regular updates on estimated wait times.  *See id.*, ¶¶ 7–10.  The Agreement also requires HRA to post signage at its centers and on its website notifying applicants of their right to an in-person interview at an appropriate HRA Center.  *See id.*, ¶ 11.  Finally, the Settlement provides for streamlined recertification interviews for certain households—such as those with members over 55 or disabled, with no earned income—by establishing an Interactive Voice Response ("IVR") system that allows them to recertify without speaking to a worker.  *See id.*, ¶¶ 13–14.

### C.    Application and Recertification Processing (Ex. 1, ¶¶ 22–35)

The Settlement addresses critical aspects of document submission and case processing. Regarding document submission, the Settlement requires HRA to develop a system to index all documents submitted by CA applicants and recipients within five days and provide a receipt confirming submission.  *See id.*, ¶¶ 24–25.  It also establishes a new process for handling illegible documents that gives applicants and recipients notice and an opportunity to resubmit.  *See id.*, ¶¶ 26–27.  To reduce improper denials and unnecessary burdens on applicants and recipients, the Agreement requires the implementation of system prompts and features to ensure staff check for and reuse documents already in HRA's possession before denying an application for missing paperwork.  *See id.*, ¶¶ 28–29.  The Settlement further requires HRA to implement a system edit that will bar workers from rejecting applications for failure to submit documentation when a document has been scanned but not yet indexed.  *See id.*, ¶ 30.  Lastly, the Settlement provides for improvements to ACCESS HRA, such as procedures to make it easier for clients to obtain their Client Identification Number ("CIN") and to upload documents using application confirmation numbers.  *See id.*, ¶¶ 33–34.

### III.    Policies, Training, and Monitoring

To ensure these changes are implemented effectively and durably, the Settlement provides for policy development, staff training, and extensive monitoring.

### A.    Review of Policies and Training (Ex. 1, ¶¶ 36–37)

The Settlement requires HRA to provide Class Counsel with drafts of all policies, procedures, notices, and training materials created or modified as a result of the Settlement for review and comment prior to final publication and implementation.

### B.    Monitoring (Ex. 1, ¶¶ 38–54)

The Agreement establishes extensive monitoring requirements, obligating HRA to provide regular, detailed reports to Class Counsel on a variety of key metrics to monitor compliance. These monitoring provisions require HRA to meet specific, escalating benchmarks for application and recertification timeliness rates for both CA and SNAP over the first five months of the agreement and create a process for the parties to meet and confer if HRA fails to maintain a 95 percent application timeliness rate after seven months. *See* Ex. 1, ¶¶ 39–41. The monitoring reports will also track interview wait times, specifically the Average Wait Time and the percentage of callers waiting longer than three hours for the CA and SNAP On-Demand interview lines. *See id.*, ¶¶ 18–21, 45. HRA will also provide data to allow Class Counsel to monitor the effectiveness of the second callback attempts, and to evaluate the proportions of cases rejected or closed due to incomplete interviews. *See id.*, ¶¶ 47–49. Finally, the Settlement provides for the establishment of a Rejection Review Team to review a monthly random sample of CA applications and report on the rate of incorrect rejections. *See id.*, ¶¶ 50–51.

**IV.    Jurisdiction, Enforcement, and Fees**

    **A.    Term and Release of Claims (Ex. 1, ¶¶ 56–57, 63–65)**

The Court will retain jurisdiction over the action for an Effective Period of four years. The Settlement further outlines the conditions under which Plaintiffs may move to extend the Court's jurisdiction based upon Defendants' significant, frequent, and recurring violations of the Settlement terms. The Settlement instructs that any extension sought may be for a period of up to one year but for no longer than a total jurisdiction of seven years. The Settlement includes the stipulation that in exchange for the relief provided, Class Members will release all systemic claims against the Defendants that were or could have been raised based on the factual allegations in the Complaint regarding application and recertification timeliness, On-Demand Interview systems, and document processing through the date of the Stipulation.

    **B.    Enforcement (Ex. 1, ¶¶ 60–62)**

The Settlement establishes a process for enforcement, which provides that if Class Counsel believes HRA has failed to comply with the Settlement, they must provide written notice to Defendants' Counsel. The enforcement process then requires the parties to meet and confer in an attempt to resolve the issue before Plaintiffs may seek relief from the Court. The Settlement specifies that a finding of non-compliance requires that the failures are systemic, not minimal or isolated.

    **C.    Attorneys' Fees (Ex. 1, ¶ 66)**

Regarding attorneys' fees, the Agreement dictates that the parties will negotiate in good faith the amount of reasonable attorneys' fees and costs. If an agreement cannot be reached, Class Counsel may file an application with the Court. Under the agreement, Defendants do not contest Plaintiffs' entitlement to fees and costs but reserve the right to challenge the reasonableness of the amount.

## ARGUMENT

**I.    The Court Should Preliminarily Approve the Parties' Settlement**

Federal courts have a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted). Expeditious settlement "allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hadel v. Gaucho, LLC*, 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016); *Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 477 (E.D.N.Y. 2016) ("In exercising its discretion, a court should be mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" (internal citation omitted)).

Under Federal Rule of Civil Procedure 23(e), this Court must approve the Settlement before it can become binding on the Parties. Courts should approve a class action settlement if the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 23(e)(2). "The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85–87 (2d Cir. 2001). The Court should give "proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

Specifically, to determine a settlement's fairness under Rule 23(e)(2), a court must consider whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other. In *City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), the Second Circuit set forth nine factors courts use to aid in conducting this analysis (together, the *Grinnell* factors):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[2]

### A.    The Settlement Is Fair, Reasonable, And Adequate

1.    Rule 23(e)(2)(A): Named Plaintiffs and Class Counsel Have Adequately
Represented The Class

Rule 23(e)(2)(A) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class."  This is a "procedural" inquiry, and "the focus . . . is on the actual performance of counsel acting on behalf of the class."  Fed. R. Civ. P. 23(e)(2)(A)–(B) advisory committee's note to 2018 amendment.  Here, the Named Plaintiffs and Class Counsel have more than adequately represented the Class throughout the litigation, weighing in favor of settlement.

Class Counsel performed thousands of hours of work on this litigation, including: interviewing, collecting documents from, and providing information to Named Plaintiffs and other Class Members; filing a detailed Complaint; conducting written discovery and document

---

[2] *See Hyland v. Navient Corp.*, 48 F.4th 110, 121 (2d Cir. 2022) ("To evaluate the fairness, reasonableness, and adequacy of a class settlement, courts employ the nine factors set out in *City of Detroit v. Grinnell Corp.*"); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (explaining that after the 2018 amendments to Fed R. Civ. P. 23(e), "[t]he factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors and 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal'" (internal quotation marks and citation omitted)).

discovery; litigating preliminary relief; and painstakingly negotiating the Settlement over the course of more than a year.

2.    Rule 23(e)(2)(B): The Settlement Proposal Was Negotiated at Arm's
<u>Length</u>

Rule 23(e)(2)(B) requires that "the proposal [be] negotiated at arm's length." The procedural fairness of a settlement is based on the negotiating process that led to it. *D'Amato*, 236 F.3d at 85. To find a settlement process fair, the court must "ensure that the settlement resulted from arm's-length negotiations and that plaintiff['s] counsel . . . possessed the experience and ability . . . necessary [for] effective representation of the class's interests." *Id.* (internal quotation marks and citation omitted).

The settlement discussions in this matter, which began in late summer 2024, were highly contested and spanned more than 12-months. These negotiations entailed dozens of telephone and video conferences between the Parties; the filing of letters to the Court regarding the status of settlement negotiations; and the exchange of dozens of drafts of proposals, stipulations, settlement language, and related questions. Given the Parties' extensive settlement efforts, Rule 23(e)(2)(B) is satisfied. *See, e.g., M.F. by & through Ferrer v. N.Y.C. Dep't of Educ.*, 671 F. Supp. 3d 221, 226 (E.D.N.Y. 2023) (finding settlement procedurally fair where parties engaged in dozens of settlement sessions, involved subject matter experts, produced thousands of pages of relevant documents, and involved "highly skilled" counsel).

3.    <u>Rule 23(e)(2)(C): The Relief Provided for the Class Is Adequate</u>

(a)    Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) asks the Court to consider the "costs, risks, and delay of trial and appeal," and overlaps with a number of *Grinnell* factors, which help guide the Court's application of the Rule. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

Specifically, the Court's inquiry here should be guided by the following *Grinnell* factors, which all favor approval of the Settlement: the complexity, expense, and likely duration of the litigation (Factor 1); the stage of the proceedings and amount of completed discovery (Factor 3); the risks of establishing liability (Factor 4); the risks of establishing entitlement to relief (Factor 5); the ability of the Defendants to withstand a greater judgment (Factor 7); the range of reasonableness of the Settlement in light of the best possible recovery (Factor 8); and the range of reasonableness of the Settlement as compared to a possible recovery in light of all the attendant risks of litigation (Factor 9). *Id.* at 693–96. As explained below, proceeding to trial in this action would have involved extensive time and resources, and significant litigation risk. Critically, the longer it takes to bring this matter to a close, even if Plaintiffs fully prevail, the longer Class Members must wait for a binding order that their claims be timely adjudicated. By settling now, Class Members will receive the benefits of the Settlement on a timeframe that is much quicker than would result even from fully successful litigation. *See, e.g., M.F.*, 671 F. Supp. 3d at 226 (granting approval of final settlement that provided class with "broad systemic injunctive relief," noting that "continuing to litigate would only further delay relief for Plaintiffs and class members").

First, complexity, expense, and likely duration of the litigation favor approval of the Settlement. "Settlement is favored" where, as here, it "results in substantial and tangible present recovery, without the attendant risk and delay of trial." *Sykes v. Mel Harris & Assocs., LLC*, No. 09-cv-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (internal quotation marks and citation omitted). Absent a settlement, and despite Plaintiffs' view as to the strength of their claims, the parties continue to face the prospect of significant costs and protracted litigation in advance of a complex trial. Seeking to avoid growing costs, the parties "have invested considerable resources in the case through data collection, litigation efforts, and settlement negotiations." *D.S. ex rel. S.S.*

*v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, 76 (E.D.N.Y. 2008). The parties have worked tirelessly to craft a meaningful, effective resolution to this case that provides much-needed, near-term relief to the Class. And "[a]bsent a settlement, these costs will only escalate." *Id.* This factor thus weighs in favor of the proposed settlement. *See, e.g., Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 196–97 (S.D.N.Y. 2012) (granting final approval of settlement class action where "[t]he path from this stage of the litigation to a final judgment . . . would be long, complicated, and expensive . . . [n]otwithstanding the strength of the evidence Plaintiffs elicited during . . . investigation and discovery"), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

Second, the current stage of this action's proceedings and the discovery completed to date favor approval of the Settlement. The relevant inquiry for this factor is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 699. Since January 2023, the Parties have: (i) engaged in written discovery and document discovery; (ii) participated in scores of negotiation sessions across multiple methods, including, most recently, weekly settlement meetings with all Parties, and *ad hoc* meetings amongst the parties; and (iii) exchanged crucial data and other progress-tracking information to aid in settlement discussions. Thus, the stage of the proceedings and the amount of discovery completed by the parties has given Plaintiffs a sufficient understanding of the case and favors the proposed Settlement.

Third, the risks of establishing liability and entitlement to relief further counsel towards preliminary approval. To assess these factors, the Court should "balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation," including Plaintiffs' "ab[ility] to prove liability" and their desired remedy. *In re GSE Bonds*

*Antitrust* Litig., 414 F. Supp. 3d at 694.  In particular, Plaintiffs face a risk that they could prevail on liability but nevertheless achieve only limited relief compared to that sought in the Complaint and that achievable with Defendants' cooperation and agreement via the Settlement.  The proposed Settlement sets forth measurable goals and specific actions, all of which Defendants have agreed are feasible, to bring the system into compliance as swiftly as possible.

Fourth, the ability of Defendants to withstand a greater judgment given their budgetary and institutional constraints supports preliminary approval of the Settlement.  As public agencies, DSS and HRA are limited by their approved budgets, and any greater judgment would fall on the taxpayers in the form of further protracted litigation costs and costs to effect compliance with any ultimate injunctive remedy.  *See Furlong v. United States*, 132 Fed. Cl. 630, 634 (Fed. Cl. 2017); *Berkley v. United States*, 59 Fed. Cl. 675, 712–13 (Fed. Cl. 2004) ("The ability of the defendant, in this case the United States government, to withstand a greater judgment weighs neither in favor of nor against approving the settlement.").  Plaintiffs have worked extensively with Defendants to fashion a meaningful remedy that provides relief to the Class as quickly as is feasible given Defendants' institutional and monetary constraints.

Fifth and last, the "most important" *Grinnell* factor, the "strength of the case for plaintiffs on the merits, balanced against the [relief] offered in settlement," favors preliminary approval. *D.S.*, 255 F.R.D. at 78 (alterations in original).  This analysis requires the Court to evaluate the adequacy of the settlement in light of any "uncertainties of law and fact" and "the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation marks and citation omitted). These two factors, which "are often combined for the purposes of analysis," *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 2024 WL 3236614, at *26 (E.D.N.Y. June 28,

2024), both weigh in favor of settlement because the proposed settlement provides the Class valuable relief and because further litigation will involve significant uncertainty and delay.

The terms of the proposed Settlement fall well within the range of reasonableness. The Settlement offered to the Class comprehensively addresses the problems alleged in the Complaint. Specifically, as described above, Defendants will agree to injunctive relief that includes compliance with federal and state timeliness standards; changed practices; and periodic reporting to track Defendants' progress. The proposed Settlement thus provides a significant measure of the relief sought by the Class. Further, the proposed Settlement, if approved, will mitigate uncertainty, afford critical relief to Class Members in short order, and provide a structure to ensure that Defendants comply with federal and state law in the future. This comprehensive relief, "particularly in light of the risks and shortcomings of continued litigation, weighs strongly in favor of approval of the settlement under this final part of the *Grinnell* analysis." *Id.* at 79.

(b)    Rule 23(e)(2)(C)(ii): Effectiveness of Proposed Method of Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) directs the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims." "Because of the nature of the solely injunctive relief sought in this class action," this factor is inapplicable. *Liberty Res., Inc. v. City of Philadelphia*, 2023 WL 3204018, at *8 n.5 (E.D. Pa. May 1, 2023); *Romero v. Securus Techs., Inc.*, 2020 WL 6799401, at *5 (S.D. Cal. Nov. 19, 2020) ("[B]ecause the settlement agreement provides only injunctive relief that applies generally equally, there is no need for a method of distribution.").

(c)    Rule 23(e)(2)(C)(iii): Attorneys' Fees

In conjunction with the Settlement, the parties have agreed to negotiate in good faith reasonable attorneys' fees that Defendants would agree to pay to Class Counsel. This award of

attorneys' fees and costs does not negatively impact the Class Members in any respect, because Plaintiffs have sought only declaratory and injunctive relief in the Complaint and thus a fee award to Plaintiffs is wholly separate from the relief provided to the Class.

        (d)      Rule 23(e)(2)(C)(iv): Agreements Made in Connection with Proposal

Rule 23(e)(2)(C)(iv) directs the Court to consider "any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv). There are no agreements made in connection with the proposed Settlement other than the Settlement itself.

        4.      Rule 23(e)(2)(D): The Proposal Treats Class Members Equitably Relative to Each Other

The Settlement is fair and treats Class Members equitably relative to each other. This factor examines "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *D'Angelo v. Hunter Bus. Sch., Inc.*, 2023 WL 11845607, at *14 (E.D.N.Y. Jan. 24, 2023) (quoting Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment). Here, as described above, the timeliness obligations of the Settlement operate uniformly to ensure Class Members' claims are adjudicated timely, and the process improvements and harm mitigation provisions apply equally to every member of the Class using affected procedures. Likewise, the Settlement release provides equal protection to all Class Members seeking individualized relief with respect to their individual benefits applications. *See* Ex. 1, ¶ 57. Further, the Settlement's release provisions apply only to those claims brought or that could have been brought by the Class "based on the allegations raised in the complaint . . . regarding application and recertification timeliness, On-Demand Interview systems, and document processing through the date of this Stipulation." Ex.1, ¶ 57. "Because the injunctive and

declaratory relief affects all class members equally, this factor is not relevant." *See Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 358 (E.D. Pa. 2021). Thus, this factor weighs in favor of approval.

## II.    The Proposed Notice of Class Action Settlement Will Provide Reasonable Notice to Absent Class Members

The Federal Rules of Civil Procedure require notice to be provided when a class action settles. *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1)(B). Notice to class members must be made "in a reasonable manner" that is "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B), (e)(1)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Wal-Mart*, 396 F.3d at 114. Rather, notice is considered adequate "if it may be understood by the average class member." *Id.* Notice may therefore be made by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

Accompanying this motion, appended as Exhibit 2 to the Lundgren Declaration, is a proposed Notice of Proposed Class Action Settlement ("Notice") prepared by the Parties for the purpose of providing notice of the proposed Settlement Agreement and accompanying Rule 23(e) class hearing procedures to absent members of the Plaintiff class. Upon the Court's approval of the Notice and scheduling of a fairness hearing, the Parties propose to accomplish distribution of the Notice through several methods.

Within forty-five (45) days of the Court's approval of the Proposed Order Defendants will physically display the proposed Class Settlement Notice in a visible space in (1) each HRA Center, including SNAP Centers, Benefits Access Centers and HASA Centers; and (2) at all client-facing NYCHRA offices located within the Civil Court of the City of New York: Housing Parts. Defendants will also electronically post the proposed Class Settlement Notice on the HRA website

17

and the ACCESS HRA web browser portal.  For the physical locations listed as (1)–(2) above, Defendants will post the Class Settlement Notice in English and Spanish and they will provide the Class Settlement Notice in all other Local Law 30 languages by posting a QR Code Flyer and they will make a physical copy of the Class Settlement Notice in all Local Law 40 languages available upon request.  Class Counsel will post the Class Settlement Notice on the websites of the New York Legal Assistance Group and The Legal Aid Society and they will electronically distribute the Class Settlement Notice to legal services providers, community-based organizations and elected officials and request these organizations and individuals post copies of the Class Settlement Notice.  *See* Lundgren Decl. ¶ 21.

Utilizing electronic and physical postings of the Class Settlement Notice is an appropriate and sufficient method of disseminating the Class Settlement Notice to class members.  *See Glover v. City of Laguna Beach*, No. 15-cv-01332, 2018 WL 6131601, at *5 (C.D. Cal. July 18, 2018) (finding posting copies of notice in English and Spanish in public spaces and on parties' websites to be meaningful notice for a 23(b)(2) settlement); *Kaplan v. Chertoff*, No. 06-cv-5304, 2008 WL 200108, at *13 (E.D. Pa. Jan. 24, 2008) (concluding that "individual notice is not required" for a 23(b)(2) settlement and finding posting notice on public websites and distributing to community-based and non-profit organizations sufficient).  This notice plan employs adequate means to ensure that the average member of the Class is fairly apprised of the proposed settlement.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 58–59 (E.D.N.Y. 2019).

The content of the proposed Class Settlement Notice is also appropriate.  The Class Settlement Notice is written in language that is as plain and simple as possible.  The Class Settlement Notice also contains all of the requirements listed in Rule 23(c)(2)(B), including a

"general description" that "fairly apprise[s] [the] prospective members of the class of the class action's pendency, the relevant terms of the proposed settlement, and their options in connection with th[e] case." *Weinberger* v. *Kendrick*, 698 F.2d 61, 70–71 (2d Cir. 1982) (internal quotation marks omitted). And the Class Settlement Notice will direct Class Members to the NYLAG website, which will have additional information. *See* Lundgren Decl. ¶ 21.

## III.    Fairness Hearing

The proposed Preliminary Approval Order would direct that the Court hold a Fairness Hearing on a date and time to be set by the Court. Class Members can present objections in advance of the hearing to Class Counsel via phone or email; Class Counsel will provide Defendants' Counsel with copies of any objections they receive within three business days of receipt and will file any objections they receive with the Court before the Fairness Hearing. At the Fairness Hearing, Class Members who have provided notice to Class Counsel will have the opportunity to voice objections to the Settlement Stipulation. Plaintiffs respectfully request the opportunity to address these objections, if any, in a post-hearing submission promptly after the conclusion of the hearing.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court:

1.    Enter the proposed Preliminary Approval Order, attached as Exhibit 3 to the Lundgren Declaration; and

2.    Award such other and further relief as this Court deems just and proper.

19

By: /s/ Abby Biberman
    Abby Biberman

Abby Biberman
Julia Russell
Kate Fetrow
NEW YORK LEGAL ASSISTANCE
GROUP
100 Pearl Street, 19th Floor
New York, NY 10004
Tel: (212) 613-5000
abiberman@nylag.org
jrussell@nylag.org


By: /s/ Emily Lundgren
    Emily Lundgren

Emily Lundgren
Katie Kelleher
Rachel Clapp
Evan Henley
Susan Welber
Laboni Rahman
Edward Josephson
Anne Callagy
Judith Goldiner
THE LEGAL AID SOCIETY
49 Thomas Street, 5th Floor
New York, NY 10013
(212) 298-5232
elundgren@legal-aid.org
kkelleher@legal-aid.org
rclapp@legal-aid.org
ewhenley@legal-aid.org
sewelber@legal-aid.org
lrahman@legal-aid.org
ejosephson@legal-aid.org
acallagy@legal-aid.org
jgoldiner@legal-aid.org

*Attorneys for Plaintiffs*

By: /s/ Benjamin E. Rosenberg
    Benjamin E. Rosenberg

Benjamin E. Rosenberg
Arielle Dragon
Andrew Stahl
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 613-5000
benjamin.rosenberg@dechert.com
arielle.dragon@dechert.com
andrew.stahl@dechert.com